IN THE DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

CASE NO. 2:23-CV-351-AWA-LRL

JACOB GAVIN HILES,

      Plaintiff,

v.

CABLE NEWS NETWORK, INC.,

      Defendant.

_____/

## AMENDED COMPLAINT

      Plaintiff, Jacob Gavin Hiles ("Hiles" and/or "Plaintiff"), by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 15(a)(1)(B), hereby files this Amended Complaint asserting claims for defamation by implication (Count I) and defamation *per se* (Count II) against Defendant, Cable News Network, Inc. ("CNN" and/or "Defendant"), and in support thereof states as follows:

## PARTIES

      1.     Plaintiff is a private citizen, Virginia resident, and domiciled in Virginia Beach, Virginia. Plaintiff is also self-employed as the owner of a local fishing charter boat company ("Matador Charters"), which has operated in Virginia Beach and served the greater Virginia Beach community for more than 20 years.

      2.     Defendant is a Delaware corporation and multinational news network headquartered in Atlanta, Georgia. Defendant is among the most popular news networks in the

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **1** of **42**

world and disseminates news through a multitude of platforms including on its website "CNN.com" that averaged an estimated 129 million viewers every month in 2022.[1]

## JURISDICTION

3.      The Court has personal jurisdiction over Defendant, a citizen of Delaware and Georgia, pursuant to Va. Code § 8.01-277.1(A)(6) as Defendant waived any objection and/or otherwise consented to personal jurisdiction by virtue of removing this action from state court to the U.S. District Court for the Eastern District of Virginia.[2]

4.      Notwithstanding this waiver, the Court has personal jurisdiction pursuant to Va. Code § 8.01-328.1(A) and the Due Process Clause in the United States Constitution as Plaintiff's claims arise from Defendant regularly transacting business in the forum state including by using internet servers in Virginia to publish defamatory statements about Plaintiff in Virginia (and around the world) where Plaintiff also suffered the resulting harm.[3]

5.      The Court's exercise of personal jurisdiction also does not offend traditional notions of fair play and substantial justice as Defendant could reasonably expect to being haled into a Virginia court by virtue of regularly transacting business in the forum state and committing tortious conduct against a Virginia resident who also suffered the resulting harm in Virginia.

6.      The Court has subject matter jurisdiction as there is complete diversity between the parties: Plaintiff is a citizen of Virginia and Defendant is a citizen of Delaware and Georgia.

---

[1] CNN Press Room, CNN Digital, *CNN is Once Again the #1 Global Digital News Outlet of the Year* (Dec. 20, 2022) at: https://cnnpressroom.blogs.cnn.com/2022/12/20/cnn-digital-2022-ratings-traffic-first-one-top/#:~:text=CNN%20had%20a%20monthly%20average%20of%20129%20million%20unique%20visitors,is%20January%20%E2%80%93%20November%20YTD).

[2] *See* July 17, 2023, Def. Not. of Removal (ECF 1).

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **2** of **42**

Moreover, the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees. *See* 28 U.S.C. § 1332.

**VENUE**

7.      Venue is proper with the U.S. District Court for the Eastern District of Virginia as the events giving rise to Plaintiff's claims for defamation by implication (Count I) and defamation *per se* (Count II) occurred in Virginia Beach, Virginia, where each cause of action otherwise accrued. *See* U.S.C. § 1391(b)(2).

**GENERAL ALLEGATIONS**

**I.      U.S. Capitol Riots**

8.      At or around 5:30 a.m. on January 6, 2021, Plaintiff arrived alone in Washington, D.C. after driving from his home in Virginia Beach to exercise his First Amendment rights. More specifically, Plaintiff went to the U.S. Capitol that morning for the sole purpose of attending various political "pro-Trump" rallies held in Washington, D.C. later that day.

9.      The demonstrations were permitted events that were expected to be peaceful and attended by thousands of peaceful protestors. The demonstrations were also vetted by the U.S. Capitol Police Board weeks before. Each event was organized by a different individual or group—none of which Plaintiff was a member of and/or affiliated with in any capacity.

10.     The rallies were specifically organized following the 2020 Presidential Election and intended to display support for then-President Donald Trump following his defeat in the election. Several demonstrations including the "Stop the Steal" rally, which Plaintiff attended (among others), were also organized to protest the results of the 2020 Presidential Election—a right expressly protected by the First Amendment.

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **3** of **42**

11.     Several months after the rallies occurred—on June 8, 2021—Defendant published an article on its website entitled, "READ: Bipartisan Senate report investigating January 6 Capitol Attack."[4] The article contained a copy of the Senate report released the same day, which, according to the article, "reveal[ed] previously unknown details" about the U.S. Capitol riots that resulted from the rallies held on January 6, 2021, at the U.S. Capitol.

12.     The Senate report contained a timeline of events that occurred that day and noted how the demonstrations began as peaceful protests but descended into chaos after a few hours when a "riot" was officially declared by local police at the U.S. Capitol around 1:49 p.m. – approximately 40 minutes after then-President Trump concluded his speech at the "Stop the Steal" rally, which began at 12:00 p.m. and lasted for 70 minutes.[5]

13.     Approximately 20 minutes after a riot was declared by police, at or around 2:11 p.m., a large group of violent rioters and insurrectionists who attended the demonstrations as well proceeded to engage and assault U.S. Capitol police officers. The rioters eventually pushed through police barricades surrounding the U.S. Capitol Building and breached the building moments later in a coordinated effort to prevent Congress from certifying the results of the Electoral College. Plaintiff was not part of this unlawful effort.

14.     The Senate report and related court filings indicate that violent rioting then took place inside the U.S. Capitol Building for the next approximately 40 minutes. During this time,

---

[4] CNN, CNN Politics, *READ: Bipartisan Senate report investigating January 6 Capitol attack* (June 8, 2021) at: https://www.cnn.com/2021/06/08/politics/report-investigating-capitol-attack/index.html.

[5] *See* Bipartisan Senate Report, *Examining the U.S. Capitol Attack: A Review of the Security, Planning, and Response Failures on January 6*, at 21 – 36 (June 8, 2021) at: https://www.documentcloud.org/documents/20801729-jan-6-hsgac-rules-report.

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **4** of **42**

the violent rioters and insurrectionists ransacked offices, smashed windows and doors to the building, committed theft, vandalism, and verbally and physically assaulted U.S. Capitol police officers inside while demanding that members of Congress be "brought out" to meet the rioters.

15.     After the violent riots occurring inside the U.S. Capitol Building eventually subsided around 2:45 p.m., hundreds and potentially thousands of other demonstrators outside the building who did not participate in and/or encourage the violent riots that occurred within formed a que to the U.S. Capitol Building and similarly—albeit illegally—walked inside the building at approximately 2:50 p.m.

16.     Most of these demonstrators (including Plaintiff) proceeded to peacefully meander through the U.S. Capitol Building for mere minutes, even calmly conversing with U.S. Capitol police officers inside, before exiting under their own volition. The vast majority—including Plaintiff—did not commit any violence, vandalism, theft, nor other crimes even remotely reflective of "rioting" or participating in an insurrection and/or in any coordinated effort to overthrow the U.S. Government.

**II.     Plaintiff's Plea Agreement**

17.     On September 8, 2021, Plaintiff entered a plea agreement in connection with trespassing inside the U.S. Capitol Building at approximately 2:50 p.m. on January 6, 2021. The plea agreement, which was publicly accessible at the time of the defamatory article giving rise to the claims in this lawsuit (the "Article"), also makes clear that Plaintiff did not participate in any violence, theft, vandalism, rioting, insurrection, rebellion, revolution, anarchy, and/or other similar crimes at the U.S. Capitol.

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page 5 of 42

18.     The plea agreement instead reflects that Plaintiff ultimately pled guilty to a single count of "Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G)," which, as reflected in the plea agreement filed with the court on September 9, 2021, "is a class B misdemeanor" such that "the sentencing guidelines [did] not apply" to Plaintiff's criminal case.

19.     It is also material to the claims in this lawsuit that, just one month before Plaintiff entered the plea agreement, Defendant published another article about the U.S. Capitol riots on its website on August 17, 2021. That article (entitled "Some US Capitol rioters stay defiant, even while pleading guilty") reported on a different criminal case concerning another demonstrator who peacefully, but illegally entered the U.S. Capitol Building at roughly the same time as Plaintiff and many others.

20.     The article reported in relevant part: "Federal prosecutors offered [the demonstrator] **the typical deal for nonviolent rioters**"[6] and specified that the "typical deal" involved requiring the demonstrator "to admit to key elements of the crime he was charge with: **Illegally parading, demonstrating, or picketing inside the Capitol building.**" *Id.* The same "deal" that Plaintiff agreed to when pleading guilty to an identical charge three weeks later.

21.     The article also quoted the demonstrator as explaining "that police officers 'weren't even trying to stop us' from entering the Capitol" and that "[t]he door was literally held up by someone who appeared to be a person of authority." *Id.* Notably, Plaintiff also made essentially

---

[6] Cohen, Marshall, CNN Politics, *Some US Capitol rioters stay defiant, even while pleading guilty* (Aug. 17, 2021) at: https://www.cnn.com/2021/08/17/politics/capitol-rioters-defiant-guilty-pleas/index.html

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **6** of **42**

the same remarks when interviewed by the FBI around the time of his arrest. Of course, the Article at issue in this case did not similarly report Plaintiff's statements because they did not fit the narrative.

22.     Defendant also knew at the time it published the Article that Plaintiff had entered a plea agreement with the U.S. Government that attached a "Statement of Offense," which contained a factual summary of Plaintiff's actions at the U.S. Capitol as stipulated to by the U.S. Government. Indeed, the agreement reflects that the U.S. Government expressly acknowledged the Statement of Offense "fairly and accurately described [Plaintiff's] actions" at the U.S. Capitol.[7] [8] This was also not reported in the Article.

23.     The Statement of Offense—which was also prepared by the U.S. Government after the FBI had interviewed Plaintiff about his actions on January 6, 2021, and the FBI spent months subsequently reviewing Plaintiff's social media posts and investigating Plaintiff's conduct before, during, and after his attending the demonstrations at the U.S. Capitol, specifically contained the following factual stipulations concerning Plaintiff's actions:

> 5.     At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

> 6.     At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S.

---

[7] *See* Sept. 9, 2021, Plea Agreement, Sec. 2, Factual Stipulations, at 1, Ex. B.
[8] *See also* Sept. 9, 2021, Statement of Offense, Ex. C.

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **7** of **42**

Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted with those acts. **The riot** resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

8.      The defendant, Jacob Hiles, unlawfully entered the U.S. Capitol on January 6, 2021. **The defendant traveled from his home in Virginia to Washington, D.C. to participate in the "Stop the Steal" rally against the results of the 2020 Presidential Election, along with his cousin, James Matthew Horning, who traveled from Ohio.** After the rally, the defendant marched to the U.S. Capitol, where at approximately 2:50 p.m. he and Horning entered together. The defendant had brought goggles with him, and he wore them to protect himself from tear gas being deployed by law enforcement against the crowd.

9.      The morning of January 6, 2021, the defendant posted a selfie-style photograph on Facebook of him in his car geotagged to Capitol Hill. The defendant and Horning both posted multiple videos and photographs showing them inside and outside the U.S. Capitol on January 6, 2021, including smoking an unknown substance.

10.     Following January 6, 2021, the defendant admitted on Facebook and to law enforcement that he traveled to Washington, D.C. and entered the U.S. Capitol on January 6, 2021. On Facebook, he posted that he 'hoped a large crowd would send a message that we will not allow our rights to be taken.'

11.     The defendant and Horning knew at the time they entered the U.S. Capitol Building that they did not have permission to enter the building, and the defendant and Horning paraded, demonstrated, or picketed."

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **8** of **42**

### V.     Defamatory Article

24.     On October 15, 2021, Defendant's news reporter, Jessica Schneider, who had been covering the U.S. Capitol riots for months, placed a phone call to one of the defense attorneys representing Plaintiff in his criminal case (Charles Haskell). During the call, Schneider requested a statement from Haskell about the case. In response, Haskell advised he would only provide a statement if Defendant published an accurate and favorable story about Plaintiff.

25.     Haskell also advised Schneider during the call that Plaintiff recently pled guilty to one misdemeanor count on September 9, 2021, in connection with illegally entering the U.S. Capitol Building. Additionally, Haskell told Schneider that Plaintiff had voluntarily assisted the FBI with identifying violent rioters and insurrectionists inside the U.S. Capitol Building that day despite receiving no benefit for this cooperation.

26.     The call concluded with Schneider agreeing Defendant would write a favorable story about Plaintiff given these facts and in exchange for Haskell providing a statement (which occurred). Haskell's statement appears in the last paragraph of the Article, which reflects: "Mr. Hiles has done everything he can to be cooperative throughout this entire investigation,' defense attorney[] Charles Haskell . . . told CNN. 'Mr. Hiles is receiving no benefit in exchange for his cooperation and he intends to do everything he can to put this incident behind him.'"[9]

27.     Mere hours after the call ended, Defendant published the Article on the "CNN Politics" section of its website. The Article was entitled, "US Capitol Police officer indicted on obstruction of justice charges in connection with January 6". As mentioned, this is the Article that

---

[9] Schneider, Jessica, CNN, CNN Politics, *US Capitol Police officer indicated on obstruction of justice charges in connection with January 6* (Oct. 15, 2021), at: https://www.cnn.com/2021/10/15/politics/capitol-police-january-6/index.html.

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **9** of **42**

forms the basis of Plaintiff's defamation claims in this case, which remains accessible on Defendant's website via the following link:   https://www.cnn.com/2021/10/15/politics/capitol-police-january-6/index.html.

28.     The Article identifies Defendant's reporter, Schneider, as among the authors of the story and contains various inaccuracies and deliberately misleading and defamatory statements about Plaintiff. Individually, and in the collective, the statements directly and implicitly—and falsely—accuse Plaintiff of being among the violent rioters and insurrectionists who attacked the U.S. Capitol Building and tried to overthrow the U.S. Government on January 6th.

29.     It is apparent, then, that Defendant, by and through its reporters, knowingly reported false information in the Article about Plaintiff; namely, information appearing in court filings for Plaintiff's criminal case, including the Statement of Facts, Statement of Offense, and plea agreement. Again, this was deliberately done to fit Plaintiff into the narrative that Schneider had been reporting about the U.S. Capitol riots in recent months.[10]

30.     The well-reported narrative was that the violent rioters and insurrectionists at the U.S. Capitol on January 6th had pre-planned and coordinated an attack against the United States with the specific goal of overthrowing the U.S. Government and ensuring then-President Trump remained in power in what amounted to an attempted coup d'etat—which Plaintiff had no knowledge of nor anything to do with:

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **10** of **42**



## About

Jessica Schneider is a justice correspondent based in Washington, D.C. In addition to being an award-winning journalist, she is also an attorney.

Schneider covers the Supreme Court, the Justice Department, FBI, and a variety of legal stories. She reported throughout the Trump administration on the Mueller investigation, and the confirmation of three Supreme Court justices. She extensively reported on the January 6 Capitol attack and the criminal cases that resulted.

Prior to joining CNN, Schneider worked as a reporter at WCBS-TV in New York City where she focused her coverage on legal issues and law enforcement.

Schneider was honored with an Emmy Award for her Continuing Coverage of the Return Home New Jersey initiative by Governor Chris Christie. For 9 months, Schneider interviewed anxious parents of disabled adults, questioned and confronted Governor Christie and his appointees, and provided detailed analysis of the program that would have forced hundreds of disabled people into group homes in New Jersey, removing them from the facilities around the country where they had lived for decades. As a result of the media coverage, and a relentless push from parents, Governor Christie backed down from the plan in July 2015.

Schneider worked for two years as a litigation attorney in New York City. She attended the University of Connecticut School of Law where she was an Articles Editor for the Connecticut Journal of International Law, was one of 40 law students chosen to work at the U.S. Securities and Exchange Commission in Washington, D.C., and represented criminal defendants in Connecticut courts as part of the Criminal Clinic at UConn Law. Upon graduating with honors in 2010, Schneider took and passed the New York and New Jersey bar exams, and was admitted to practice law in both states as well as their federal courts.

Schneider began her career as a video journalist at Capital News 9 in Albany, New York, where she worked as the Amsterdam, NY Bureau Chief and Political Reporter. Then, Schneider attended law school while working as Weekend Morning Anchor and Reporter at WFSB-TV in Hartford, Connecticut.

Schneider is originally from Manchester, Connecticut where she credits her high school news program, MHS TV News, with inspiring her and fueling her passion for journalism. Schneider graduated from Boston University in 2002 with degrees in Political Science and Broadcast Journalism, and was honored to be chosen to give the Commencement Address for the College of Communication. Follow Jessica on Twitter: @SchneiderCNN

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **11** of **42**



**Jessica Schneider**
1,373 Photos & videos

Follow

 **Jessica Schnei...** @SchneiderC... · Mar 24, 2021   ...
NEW video tonight of the moments before and after Officer Brian Sicknick was hit with a searing chemical spray outside the Capitol.  The video was compiled by the @nytimes and it tracks the movements of one of the men charged with assaulting Officer Sicknick and 2 others.



💬 5        ↻ 6        ♡ 10

 **Jessica Schnei...** @SchneiderC... · Mar 18, 2021   ...
NEW videos from the FBI capture 10 suspects viciously attacking officers outside the Capitol. The videos are particularly appalling since they spotlight people who most brutally assaulted the men and women focused on guarding the Capitol. Now the FBI needs help to ID these 10.



*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

**Page 12 of 42**





*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **14** of 42



*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

31.     After accessing and reading the Article on Defendant's website the same date it was published, Haskell placed a call to Defendant's reporter, Schneider, to point out the numerous inaccuracies in the Article. Haskell also complained during the call about how the overall tenor of the Article, which falsely portrayed Plaintiff as among the violent rioters and insurrections who coordinated the attack against the U.S. Capitol in an attempt to overthrow the U.S. Government.

32.     Schneider acknowledged this motif in the Article and apologized to Haskell before explaining that the original story she authored was passed off to other reporters who made edits to the story before it was published on Defendant's website. Hence, the Article in its current form contains blatant mischaracterizations, false quotes, and other misinformation that paints Plaintiff as a kind of Timothy McVeigh-like-character who had some premeditated plan to commit violence against the United States along with other violent insurrectionists—which Defendant knew was false at the time of publication.

33.     Even after receiving the call from Haskell and despite being aware of the false statements and defamatory connotation imputed about Plaintiff, Defendant did not retract or make any substantive revisions to the Article. Indeed, Defendant did not correct a subtitle in the story falsely claiming that Plaintiff "wanted to start a revolution," nor correct an inaccurate "quote" of one of Plaintiff's Facebook posts on January 6, 2021, nor revise the blatantly false summarization of the information contained in the Statement of Facts supporting Plaintiff's initial arrest.

34.     The Article begins by addressing the indictment of U.S. Capitol Police Officer Michael A. Riley who was charged at the time with two counts of obstruction for his actions immediately following the U.S. Capitol riots.  The Article explains in the opening sentences that these charges stemmed, in part, from the officer sending Facebook messages to Plaintiff—referred

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **16** of **42**

to in the Article as a "rioter" who participated in the "January 6 insurrection"—advising Plaintiff to remove posts on his Facebook page depicting Plaintiff inside the U.S. Capitol Building:

 

## US Capitol Police officer indicted on obstruction of justice charges in connection with January 6

By Katelyn Polantz, Christina Carrega and Jessica Schneider, CNN

Updated 4:36 PM EDT, Fri October 15, 2021



CNN reporter explains the evidence against Capitol officer (3:10)

**(CNN) —** A US Capitol Police officer was indicted on obstruction charges in connection to the January 6 insurrection at the US Capitol.

According to the indictment, Michael A. Riley told a contact online to remove posts showing the person was in the Capitol building that day.

Riley's arrest is notable among the more than 600 Capitol riot cases in that he becomes the first police officer on duty on Capitol Hill on January 6 charged with allegedly attempting to help a rioter.

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **17** of **42**

"Im glad you got out of there unscathed We had over 50 officers hurt, some pretty bad," Riley also messaged to the person that day.

In mid-January, Riley told the person to "Get off of social media."

"Theyre arresting dozens of people aday. Everyone that was in the building, engaged in violent acts, or destruction of property...and theyre all being charged federally with felonies," Riley allegedly wrote.

They also spoke on the phone, prompting the person Riley communicated with to tell others about being in touch with "capitol police" and to anticipate trespassing charges.



Riley has been placed on administrative leave, USCP Chief Tom Manger said.

**RELATED ARTICLE**
DC police warned other agencies before January 6 rally that attendees were urged to 'come armed,' according to new document



Sign up for **CNN's What Matters newsletter**

Every day we summarize What Matters and deliver it straight to your inbox.

| Sign Me Up | No, Thanks |

By subscribing you agree to our privacy policy.

"Obstruction of Justice is a very serious allegation. The Department was notified about this investigation several weeks ago. Upon his arrest, the officer was placed on administrative leave pending the completion of the case. The USCP's Office of Professional Responsibility will then open an administrative investigation," Manger said in a statement.

Riley had worked with the Capitol Police for 25 years, the indictment said. He was in the K-9 unit on January 6, though he was not on duty inside the Capitol building during the attack, prosecutors say, and responded to reports of an explosive device on Capitol Hill that day.

Riley then deleted his own Facebook direct messages on January 20, his indictment says. Riley indicated in a final message on January 21 he was angry with the person after seeing video of the person smoking marijuana in the Capitol and "acting like a moron," the indictment says.

"Michael Riley has served honorably as a United States Capitol Police officer for over 25 years. We look forward to fighting the charges brought against him in court," Riley's attorney David Benowitz said in a statement on Friday.

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **18** of **42**

# Man wanted to start 'a revolution' on January 6

The man whom Riley allegedly warned is Jacob Hiles, according to a person familiar with the case and descriptions in court records.

Hiles was not named in the indictment, which referred to a person who was arrested on January 19 and was asked by the FBI about communicating with Riley, according to the allegations.

Hiles, of Virginia, said on social media that he traveled to Washington, DC, while thinking about starting "a revolution," according to investigators.

In selfies from January 6 found by the FBI on social media, Hiles wore a gaiter mask and ski goggles and a sweatshirt that said "F*ck Antifa." He had also posted on his Facebook page, "Feelin cute … might start a revolution later," tagging himself on Capitol Hill, according to documents supporting his arrest.

Hiles was arrested on January 19 and released from custody with an order to stay away from Washington. In September, he pleaded guilty to one federal charge, of parading or demonstrating inside the Capitol, according to court records.

Hiles attended the pro-Trump "Stop the Steal" rally with his cousin from Ohio, and the pair marched to the Capitol after Trump spoke, according to court records. He has agreed to pay $500 for damage to the Capitol and could face a maximum of six months in prison when he is sentenced in December.

"Mr. Hiles has done everything he can to be cooperative throughout this entire investigation," defense attorneys Charles Haskell and Alex Bell told CNN. "Mr. Hiles is receiving no benefit in exchange for his cooperation and he intends to do everything he can to put this incident behind him."

*This story has been updated with additional details.*

CNN's Whitney Wild contributed to this report.

**PAID CONTENT**

35.     Although Plaintiff is referred to as a "rioter" throughout the Article, Plaintiff was never charged or even accused of rioting at the U.S. Capitol. Moreover, the terms "riot" and/or

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **19** of **42**

"rioters" carry specific criminal implications under Virginia law, which is also not mentioned anywhere in the Article.

36.     Virginia law specifically defines the term "rioter" and/or "rioters" as follows: "Any unlawful use, **by three or more persons acting together, of force or violence** which seriously jeopardizes the public safety, peace, or order is a riot. Every person convicted of participating in any riot shall be guilty of a Class 1 misdemeanor." Va. Code. § 18.2405 ("What constitutes a riot; punishment."

37.     Federal law provides a similar definition: "[T]he term 'riot' means a public disturbance involving (1) **an act or acts of violence by one or more persons part of an assemblage of three or more persons** . . . or (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats . . . ." 18 U.S.C. § 2101 et seq. ("Riots") and 2102(A) ("Definitions").

38.     Furthermore, even Defendant has acknowledged a distinction between rioters and demonstrators in prior news reports. This includes when former CNN analyst Mark Lamont Hill explained during an episode of "CNN Tonight" covering the 2015 Baltimore riots (which injured 113 police officers, led to 250 arrests, and destroyed 285 businesses) that not all demonstrators present during those demonstrations were rioters.

39.     Hill pointed out during that newscast how context plays a role in making this distinction and specifically noted the political and social catalysts that led to initially peaceful protestors at the Baltimore riots becoming "rioters" that day stating: "I'm not calling these people

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **20** of **42**

'rioters.' I'm calling these 'uprisings,'" which, according to Hill, were in reaction to "state violence that's been waged against black and male bodies forever . . . ."

40.     Defendant's reporter, Schneider, likewise published an article on April 16, 2021, entitled "100 days after US Capitol insurrection, massive federal inquiry sees progress and roadblocks" wherein Schneider, herself, demonstrates awareness of this distinction as she reports in that article that "**[p]rosecutors brought conspiracy cases against about 20 members of these paramilitary groups, differentiating them from the hundreds of rioters facing trespassing charges.**"[11]

29.     Moreover, Schneider, who is also a licensed attorney, further reports in the same article: "**Even with all the arrests . . . missing are those much-discussed sedition charges**, which would ramp up the pressure for defendants because they could carry a 20-year prison sentence. **For all the talk – including from the former US attorney who led the inquiry – prosecutors haven't filed a single sedition charge.**" *Id.*

35.     The article further reports: "**Seditious conspiracy, generally defined as plotting to use force against the US government, seems to fit the facts of the Capitol siege. But the last time federal prosecutors tried to use the law, the case collapsed in court and ended with a judge acquitting seven of nine defendants.**" *Id.*

36.     *See also* Bernstein, Brittany, National Review, *AP Stylebook Discourages Use of 'Riot' Expands Definition of 'Protest' to Include 'Violence,'*" (Oct. 1, 2020), at: https://www.nationalreview.com/news/associated-press-stylebook-discourages-use-of-riot-

---

[11] Schneider, Jessica, CNN, CNN Politics, *100 days after US Capitol Insurrection, massive federal inquiry sees progress and roadblocks* (Apri. 16, 2021) at: https://www.cnn.com/2021/04/16/politics/capitol-attack-100-days-later/index.html

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **21** of **42**

expands-definition-of-protest-to-include-violence/; and Cillizza, Chris, CNN Politics, *Donald Trump used a word he's 'not supposed to.' Here's why.'* (Oct. 23, 2018), at: https://www.cnn.com/2018/10/23/politics/donald-trump-nationalism/index.html (**"The problem, of course, is that words matter . . . Let's start with . . . the definition . . . Then there [is] the historical context of the word . . . ."**

37.     The Article at issue in this case—which is also authored by Schneider—wholly ignores this distinction when reporting about Plaintiff and the violent rioters and insurrections at the U.S. Capitol. The Article similarly fails to delineate between the crimes allegedly committed by the indicted U.S. Capitol Police Officer and Plaintiff. More specifically, how Plaintiff (i.e., "the rioter") was not charged with obstruction of justice or for any crime relating to the officer's alleged criminality.

38.     The Article also conveniently omits any mention of the fact that the so-called rioter mentioned in the story—Plaintiff—voluntarily turned himself in to the FBI within days of learning that law enforcement intended to arrest and charge every individual who illegally entered the U.S. Capitol Building on January 6th in addition to the actual violent rioters and insurrections who committed the violence and damage that day.

39.     The Article similarly fails to report that while the U.S. Capitol Police Officer was indicted on obstruction charges, in part, for directing Plaintiff to destroy potentially incriminating evidence, Plaintiff refused to do so and instead handed over all relevant evidence to the FBI and even assisted the FBI afterward with identifying at least two of the actual rioters and insurrections at the U.S. Capitol despite receiving no benefit for this cooperation.

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **22** of **42**

40.     In addition to these material omissions—which likewise served to intentionally create the false impression in the Article that Plaintiff was also involved and/or similarly charged with the crimes attributed to the officer—the Article then falsely summarizes Plaintiff's alleged involvement in the violent riots at the U.S. Capitol. This is delineated halfway through the Article by a bold subtitle that reads: "**Man wanted to start 'a revolution' on January 6**":

## Man wanted to start 'a revolution' on January 6

The man whom Riley allegedly warned is Jacob Hiles, according to a person familiar with the case and descriptions in court records.

Hiles was not named in the indictment, which referred to a person who was arrested on January 19 and was asked by the FBI about communicating with Riley, according to the allegations.

Hiles, of Virginia, said on social media that he traveled to Washington, DC, while thinking about starting "a revolution," according to investigators.

41.     The ensuing paragraphs then waste no time divulging that the "man" or "rioter" who "participated in the January 6 Insurrection" and "wanted to start 'a revolution'" is none other than, "Jacob Hiles, according to a person familiar with the case and descriptions in court records." Notably, the "person" referenced in the latter sentence is Haskell, who, again, had spoken to at least one author of the Article mere hours before it was published.

42.     The Article also points out that "Hiles was not named in the indictment [of the U.S. Capitol Police Officer] which referred to a person who was arrested on January 19 and was asked by the FBI about communicating with Riley, according to the allegations." The Article furthermore

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **23** of **42**

includes a link to the indictment filed in the officer's criminal case in the sixth paragraph below the subtitle.

43.     However, the Article fails to mention that the indictment only identifies Plaintiff as "Person 1" and never refers to "Person 1" as a rioter, insurrectionist, rebel, anarchist, seditionist, traitor, or by any other similar term. The Article likewise fails to report that "Person 1" in the indictment was also not accused of rioting or participating in an insurrection.

44.     The indictment reports only that "Person 1" posted content on his social media accounts after the U.S. Capitol riots that proved Plaintiff was inside the U.S. Capitol Building. The indictment also reflects that Plaintiff "sent text messages to two other individuals" days later "indicating that [Plaintiff] had spoken" to the U.S. Capitol Police Officer and was assured any "**charges against [Plaintiff] were likely to involve only trespassing**."

45.     Additionally, the indictment states that the U.S. Capitol Police Officer sent a message to "Person 1" on January 16, 2021, stating: "Next time you want to come to DC just call me, you can stay at my house on the shore for free and bring your daughter to the museums. If you want to see the capitol building, let's do it legally next time…I know a guy who can get you a tour…lol. Its behind you now…lesson learned! Just ask your attorney whats next."

46.     The indictment further reports that on "January 19, 2021, Person 1 was arrested by the FBI on charges that **he unlawfully entered the U.S. Capitol on January 6 . . . .**" *Id.* Hence, there is nothing in the indictment to support that Plaintiff traveled to the U.S. Capitol with an intent to commit sedition or violence against the United States including as part of any coordinated effort to overthrow the U.S. Government.

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **24** of **42**

47.     Thus, the third sentence below the subtitle (that falsely accuses Plaintiff of "wanting to start a revolution" at the U.S. Capitol) is also *per se* defamatory and among the actionable statements supporting Plaintiff's defamation claims in this case. This sentence falsely reports: "**Hiles, of Virginia, said on social media that he traveled to Washington, DC, while thinking about starting 'a revolution,' according to investigators.**"

48.     The information conveyed by this sentence purportedly describes one of Plaintiff's Facebook posts that was uploaded to Plaintiff's personal Facebook page on the morning of January 6, 2021, after Plaintiff had already arrived in Washington, D.C. that day to attend the initially peaceful demonstrations. The Facebook post was later included among several other social media posts in the Statement of Facts supporting the original charges against Plaintiff.

49.     Notably, the Statement of Facts was prepared nine months before the Article was published and before the FBI ever interviewed Plaintiff or conducted any real investigation into Plaintiff's involvement in the U.S. Capitol riots (or lack thereof). This is apparent from the plain language in the Statement of Facts. The Facebook post referenced in the Article is included below:



*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

50.    As is clearly visible, the Facebook post reflects under the name of the account ("Jake Hiles") that it was posted on Plaintiff's Facebook page at 5:46 a.m. The post also reflects that Plaintiff was in Washington, D.C. when it was published as the "geotag" reads: "—in **Capitol Hill.**"  The post is accompanied by an obviously tongue-in-cheek caption: "Feelin cute…might start a revolution later. IDK – in Capitol Hill."

51.    Hence, it is clear Plaintiff never "said on social media that he traveled to Washington, DC, while thinking about starting a revolution," as this mischaracterization ascribes malice aforethought by conveying that Plaintiff publicly declared even before arriving at the U.S. Capitol that he had—and continued to consider—committing violence against the U.S. Government—which is provably false.

52.    This statement is also *per se* defamatory as it is falsely attributed in the Article to "investigators" who are not identified for obvious reasons—no "investigators" ever reported that Plaintiff "said" as much on social media. Even if it is presumed the statement is referring to the FBI, which included this post in the Statement of Facts supporting Plaintiff's initial arrest, the Statement of Facts similarly does not contain any information from which this statement is even reasonably inferred.

53.    To the contrary, the Statement of Facts merely reports that a single FBI agent "reviewed numerous pictures and videos" on Plaintiff's Facebook page while trying to discern Plaintiff's involvement in the U.S. Capitol riots. The agent specifically notes with respect to this post: "On January 6, 2021, a picture of an individual was posted to the Facebook account accompanied by timestamp 5:46 AM and the caption, 'Feelin cute…might start a revolution later,

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **26** of **42**

IDK – in Capitol Hill' (see Figure 1 below). Your affiant knows 'IDK' to stand for 'I don't know.'"

The pertinent portions of the Statement of Facts are included below:

Your affiant has reviewed numerous pictures and videos posted to the Facebook account, as well as another social media account. The videos and pictures I observed show the following:

- On January 6, 2021, a picture of an individual was posted to the Facebook account accompanied by timestamp 5:46 AM and the caption, "Feelin cute…might start a revolution later, IDK – in Capitol Hill" (see Figure 1 below). Your affiant knows "IDK" to stand for "I don't know."
- On January 6, 2021, a post to the Facebook account accompanied by timestamp 1:31 PM stated, "After being tear gassed for an hour, we entered the capitol, thousands of us. The fbi shot and killed a woman in front of us. We followed the trail of her blood out of the building" (see Figure 2 below).
- In a post timestamped 4:36 PM on January 6, 2021, a video was posted to the Facebook account appearing to show HILES outside a building your affiant recognizes as the U.S. Capitol. In the video, HILES explains his frustration to the camera and to others near him with respect to his assertion that the media was ignoring the fact that the FBI purportedly shot and killed a woman inside the building (see Figure 3 below).
- In the evening hours of January 6, 2021, a post to the Facebook account stated, "I'm not a smoker AT ALL, but when the cop asks you if you are gonna hit that, I ain't gonna let it g…" Attached to this post was a "selfie" style video of HILES inside the U.S. Capitol building with a group of people. In the video, HILES appears to smoke an unidentified substance (see Figures 4 and 5 below).
- In the evening hours of January 6, 2021, a photograph was posted to the Facebook account appearing to show HILES inside the U.S. Capitol Building (see Figure 6 below).

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **27** of **42**



*Figure 1*

The photograph and commentary pictured in Figure 1 was posted to the Facebook account on January 6, 2021.



*Figure 2*

54.     The Statement of Facts further reports that the FBI "confirmed the identification of HILES as the person in the images and videos described" and also observed a post on Plaintiff's Facebook that "indicated that [Plaintiff] was in the front row of individuals outside the Capitol, **[and] 'the crowd pushed him to the top of the steps' and once he had entered the Capitol, he just wanted to leave.**" Of course, none of this is reported in the Article.

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **28** of **42**

55.     Notably, the Article also lops off the "IDK" portion of the caption for Plaintiff's Facebook post in the story. This is not an insignificant detail as the FBI agent who prepared the Statement of Facts even acknowledged "IDK" to mean "I don't know." Hence, this slight edit makes the Article's false portrayal of Plaintiff as a violent revolutionary akin to a Timothy McVeigh at least appear more plausible.

56.     For the same reason, the Article omits any mention of the fact that Plaintiff did not enter the U.S. Capitol Building until approximately 2:50 p.m. on January 6, 2021, by which point the violent riots inside had effectively subsided. The Article also does mention that Plaintiff was never charged or even accused of engaging in violence, participating in an insurrection, or committing vandalism, theft, and/or any other crime while inside the U.S. Capitol Building for mere minutes.

57.     The Article instead reports that Plaintiff "attended the pro-Trump 'Stop the Steal' rally with his cousin from Ohio, and the pair marched to the Capitol after Trump spoke, according to court records." However, neither the Statement of Facts nor the Statement of Offense similarly imply that Plaintiff was incited by the former president to march to the U.S. Capitol Building.

58.     Instead, the Statement of Offense—which, again, contains a description of Plaintiff's actions as agreed to by the U.S. Government—merely reflects: "After the rally, the defendant marched to the U.S. Capitol, where at approximately 2:50 p.m. he and Horning entered together. The defendant had brought goggles with him, and he wore them to protect himself from tear gas being deployed by law enforcement against the crowd."

59.     By comparison, the Senate report cited and included in at least two of Defendant's prior articles reflects that U.S. Capitol Police "received reports of 'a very large group . . . heading

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **29** of **42**

to the U.S. Capitol from eastbound on Pennsylvania Avenue," while former president Trump was still speaking and then, at 12:45 p.m., reported that "a wall of people [had] suddenly arrived about a block west of the Capitol."

60.     Hence, the implication that Plaintiff and his cousin were part of this "wall" of demonstrators—or more specifically, among the first wave of violent rioters and insurrections who surrounded the U.S. Capitol Building before ultimately breaching the building in a coordinated effort to prevent Congress from certifying the results of the Electoral College, which constitutes sedition—is simply false.

61.     The Article further reports that Plaintiff "agreed to pay $500 for damage to the Capitol and could face six months in prison when he is sentenced in December." This statement, too, is reported out of context to falsely convey that Plaintiff was among the violent rioters who caused damaged to the U.S. Capitol Building despite Defendant knowing full well that Plaintiff was never charged nor even accused of vandalizing the U.S. Capitol Building.

62.     Although a "Restitution" section appears in Plaintiff's plea agreement, this section states only that Plaintiff "acknowledges that the riot that occurred on January 6, 2021, caused . . . approximately $1,495,326.55 [in] damage to the United States Capitol" and agreed "as part of the plea . . . to pay restitution to the Department of Treasury in the amount of $500."

63.     In other words, there is nothing to support that Plaintiff, himself, caused any damage, which the U.S. Government similarly acknowledged in the Statement of Offense attached to the plea agreement. Finally, the Article then concludes by reporting: "In September, [Plaintiff] pleaded guilty to one federal charge, of parading or demonstrating inside the Capitol," and "could face a maximum of six months in prison when he is sentenced in December."

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **30** of **42**

64.     Again, when Defendant reported about the same charge for another rioter in an article published on August 17, 2021, the description of the charge was strikingly different as the article reported: "Federal prosecutors offered [the demonstrator] the typical deal **for nonviolent rioters**," which was "to admit to key elements of the specific crime [the rioter] was charged with: Illegally parading, demonstrating, or picketing inside the Capitol building."

### VI.     CNN Viewership

65.     Since publication, the Article has been shared by many of Defendant's reported 200 million online viewers including on Facebook via Defendant's own Facebook page, which has over 39 million followers. The Article has so far been "liked" by more than 6,100 Facebook users, while 288 users commented on the Article with another 27 users sharing the Article on their own personal pages.

66.     Defendant has also shared the Article on its Facebook page for CNN Politics, which boasts an equally impressive 3 million followers. To date, around 372 Facebook users have liked this post as well while 212 users have commented on the post and 27 users have shared the Article to their own Facebook pages.

67.     Defendant has similarly shared the Article on two of its Twitter accounts that have a combined 68.4 million followers (i.e., @CNNPoltics and @CNNbrk). To date, more than 400 Twitter users have retweeted the Article on their own Twitter page(s) while approximately 1,500 Twitter users have "liked" the post.

68.     As a result of Defendant's broad publication of the Article and defamatory statements, Plaintiff and his family—including his young daughter—have been relentlessly

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **31** of **42**

bullied, treated as pariahs, and received numerous credible death threats that have been reported to the United States Attorney's Office and the FBI since the Article was published.

69.     Plaintiff's personal and professional reputation in the community have likewise been destroyed as Plaintiff resides in Virginia Beach—which has the third-largest military population of any city in the country and is regularly ranked among the most patriotic cities in America—and has been falsely accused in the Article of committing violence against his own country and countrymen.

70.     For the same reason, Plaintiff has also suffered thousands of dollars in damages stemming from a loss of business, loss of income, and a diminished earning capacity as Plaintiff has spent the past 20 years earning a living as a sole proprietor of a small fishing charter boat company operating out of Virginia Beach and, as mentioned, has been effectively treated as an outcast by his own community and business associates since the Article was published.

71.     Accordingly, Plaintiff has filed this lawsuit in good-faith and after conducting a thorough investigation into the foregoing facts, which, as set forth below, entitle Plaintiff to an award of compensatory damages, punitive damages, attorneys' fees and costs, interest, and all other relief afforded under Virginia law and as deemed appropriate by this Honorable Court and the jury.

## COUNT I
## DEFAMATION BY IMPLICATION

72.     Plaintiff adopts and incorporates into Count I the general allegations in paragraphs 1 through 71 as set forth herein and further alleges:

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **32** of **42**

73.     On October 15, 2021, Defendant published the online news article *US Capitol Police officer indicted on obstruction of justice charges in connection with January 6* (the "Article") in the CNN Politics section of its website.

74.     The Article was accessed and read the same day and (ever since) by Haskell, Plaintiff's family members, friends, business associates, Virginia Beach residents, and countless others in the United States and around the world who have similarly accessed and read the Article on Defendant's website where it continues to exist today.

75.     The Article contains the following statements about Plaintiff that collectively impute the provably false connotation that Plaintiff traveled to the U.S. Capitol on January 6, 2021, to overthrow the U.S. Government and engaged in violence, vandalism, and other crimes against the United States at the U.S. Capitol as part of a coordinated effort to achieve this end:

(a)     "A US Capitol Police officer was indicted on obstruction charges in connection to the January 6 insurrection at the US Capitol."

(b)     "Riley's arrest is notable among the more than 600 Capitol riot cases in that he becomes the first police officer on duty on Capitol Hill on January 6 charged with allegedly attempting to help a rioter."

(c)     "I'm glad you got out of there unscathed. We had over 50 officers hurt, some pretty bad,' Riley also messaged to the person that day."

(d)     "In mid-January, Riley told the person to 'Get off of social media.' 'They're arresting dozens of people aday. Everyone that was in the building, engaged in violent acts, or destruction of property…and theyre all being charged federally with felonies,' Riley wrote."

(e)     "Riley indicated in a final message on January 21 he was angry with the person after seeing video of the person smoking marijuana in the Capitol and 'acting like a moron,' the indictment says."

(f)     "The man whom Riley allegedly warned is Jacob Hiles, according to a person familiar with the case and descriptions in court records."

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **33** of **42**

(g) "Man wanted to start a 'revolution' on January 6"

(h) "Hiles, of Virginia, said on social media that he traveled to Washington, D.C., while thinking about starting a 'revolution,' according to investigators."

(i) "In selfies from January 6 found by the FBI on social media, Hiles wore a gaiter mask and ski goggles and a sweatshirt that said 'F*ck Antifa.'"

(j) "He had also posted on his Facebook page, 'Feelin cute…might start a revolution later,' tagging himself on Capitol Hill, according to documents supporting his arrest."

(k) "Hiles attended the pro-Trump "Stop the Steal" rally with his cousin, and the pair marched to the Capitol after Trump spoke, according to court records."

(l) "He has agreed to pay $500 for damage to the Capitol and could face a maximum of six months in prison when sentenced in December."

76.     These statements, even if facially true, were and are intended by Defendant to falsely impute the provably false connotation that Plaintiff traveled to the U.S. Capitol on January 6, 2021, to overthrow the U.S. Government and engaged in violence, vandalism, and other crimes against the United States at the U.S. Capitol as part of a coordinated effort to achieve this end.

77.     These statements also do, in fact, convey and/or are reasonably construed under the prevailing circumstances to impute that Plaintiff traveled to the U.S. Capitol on January 6, 2021, to overthrow the U.S. Government and engaged in violence, vandalism, and other crimes against the United States at the U.S. Capitol as part of a coordinated effort to achieve this end.

78.     There is also clear and convincing evidence that Defendant published these statements despite having actual knowledge that the connotation imputed about Plaintiff by was false and/or with reckless disregard for whether the connotation imputed was false and/or while

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **34** of **42**

entertaining serious doubts as to the truth or falsity of the connotation imputed about Plaintiff by these statements.

79.     As a result of this tortious conduct, Plaintiff has suffered damages including, *inter alia*, reputational harm, mental and emotional distress, pain and suffering, humiliation, anxiety, stress, embarrassment, a loss of business, a loss of income, a diminished capacity to enjoy life, as well as other damages to be determined.

WHEREFORE, Plaintiff, Jacob Hiles, respectfully requests the Court enter a judgment against Defendant, CNN, for compensatory damages in the amount of $50,000,000.00, punitive damages in the amount of $350,000.00, attorneys' fees, costs, interest, and all other relief the Court deems just and proper.

## COUNT II
## DEFAMATION *PER SE*

80.     Plaintiff adopts and incorporates into Count II the allegations in paragraphs 1 through 71 as set forth herein and further alleges:

81.     On October 15, 2021, Defendant published the online news article *US Capitol Police officer indicted on obstruction of justice charges in connection with January 6* (the "Article") in the CNN Politics section of its website.

82.     The Article was accessed and read the same day and (ever since) by Haskell, Plaintiff's family members, friends, business associates, Virginia Beach residents, and countless others in the United States and around the world who have similarly accessed and read the Article on Defendant's website where it continues to exist today.

(a)     "Man wanted to start a 'revolution' on January 6'

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **35** of **42**

          (b) "Hiles, of Virginia, said on social media that he traveled to Washington, DC, while thinking about starting 'a revolution,' according to investigators."

83.     These statements are provably false because each inaccurately reports the caption for Plaintiff's Facebook post at 5:46 p.m. on January 6, 2021, which reads: "Feelin cute…might start a revolution later. IDK. – Capitol Hill."

84.     Additionally, Defendant's false statement that Plaintiff "wanted to start 'a revolution'" which appears in bold as a subtitle in the Article does not convey even remotely the same message as the caption for Plaintiff's Facebook post (which was made in jest) especially when read in the complete context of the post.

85.     Defendant's false statement that Plaintiff "said on social media that he traveled to Washington, DC, while thinking about starting 'a revolution,' according to investigators" also does not convey the same message as the caption for Plaintiff's Facebook post especially when read in the complete context of the Facebook post.

86.     Furthermore, this statement also falsely attributes the inaccurate information reported to "investigators" who are not identified in the Article. However, even if the "investigators" mentioned refers to the FBI agent who prepared the "Statement of Facts" that includes a screenshot of Plaintiff's Facebook post, the statements made by the FBI in the "Statement of Facts" in no way support this statement.

87.     Additionally, both statements are *per se* defamatory because they falsely impute to Plaintiff the commission of a crime involving moral turpitude including, but not limited to, displaying written or printed matter advocating or advising of overthrowing the government,

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **36** of **42**

which, if indicted, is punishable by up to 20 years in prison. *See* 18 U.S.C. 115 § 2385 ("Advocating overthrow of Government"). [12]

88.     The statements are also *per se* defamatory because they prejudice Plaintiff in his profession and pose substantial danger to his reputation in the community especially as a sole proprietor who has earned a living for more than 20 years operating a local charter boat company in Virginia Beach, which ranks as one of the most patriotic cities in America.

89.     At all times material hereto, Defendant published these *per se* defamatory statements about Plaintiff with actual knowledge that the statements were false and/or with reckless disregard for the truth or falsity of these statements and/or while entertaining serious doubts about the truth or falsity of these statements.

90.     This is evidenced, in part, by the fact that Plaintiff's former attorney, Haskell, expressly notified Defendant the same day these statements were published that they were both false and *per se* defamatory to Plaintiff insomuch as they impute significant criminality and pose a substantial danger to Plaintiff's reputation as aforesaid.

91.     Actual malice is further demonstrated by the fact that Defendant published these statements on October 15, 2021, by which point Defendant knew that Plaintiff had pled guilty to only one misdemeanor count and that Plaintiff's plea agreement attached a "Statement of Offense" that accurately summarized Plaintiff's actions at the U.S. Capitol Building—and do not contain

---

[12] *See* 18 U.S.C. 115 § 2385 ("Whoever, with intent to cause the overthrow or destruction of any such government, prints, publishes, edits, issues, circulates, sells, distributes, **or publicly displays any written or printed matter advocating [or] advising** . . . **of overthrowing or destroying any government in the United States by force or violence** . . . or whoever organizes . . . any society, group, or assembly of persons to . . . overthrow or destruction of any such government by force or violence . . .[s]hall be fined under this title or imprisoned not more than twenty years, or both . . . .")

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **37** of **42**

any facts from which it is even reasonably inferred that Plaintiff "wanted to start a 'revolution'" or stated as much on social media before arriving at the U.S. Capitol.

92.     Actual malice is also demonstrated by the fact that Defendant was aware of the actual language in the caption for Plaintiff's Facebook post as the Article directly quotes a portion of the caption as well as refers to other information in the "Statement of Facts" that contains a screenshot of the Facebook post.

93.     As a result of this tortious conduct, Plaintiff is presumed to have suffered damages including, *inter alia*, reputational harm, mental and emotional distress, pain and suffering, humiliation, anxiety, stress, embarrassment, a loss of business, a loss of income, a diminished capacity to enjoy life, and other damages to be determined.

WHEREFORE, Plaintiff, Jacob Hiles, respectfully requests this Honorable Court enter a judgment against Defendant, CNN, for actual damages in the amount of $50,000,000.00, punitive damages in the amount of $350,000.00, attorneys' fees, costs, interest, and all other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a jury trial for all issues triable.

Dated: August 14, 2023

[Signatures on next page]

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **38** of **42**

Respectfully submitted,

**BUSH & TAYLOR, P.C.**
*Counsel for Plaintiff*
4445 Corporation Lane
Virginia Beach, Virginia 23462
Tel: (757) 213-6846
Fax: (757) 935-5533
alex@bushtaylor.com


By: /s/ Alexander H. Bell
    **ALEXANDER H. BELL**
    Virginia Bar No. 84859

**HODSON LAW FIRM | PLLC**
*Counsel for Plaintiff*
1110 Brickell Avenue, Suite 430
Miami, Florida 33131
Tel: (305) 704-9580
Fax: (305) 704-9582
don@hodsonlawfirm.com


By: _____
    **DONALD J. HODSON**
    Florida Bar No. 120256


## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the

Court this 14th day of August 2023, and electronically served via the Court's e-filing system on

the following individual(s): Jay Ward Brown, Esq., Ballard Spahr, LLP, 1909 K Street NW, 12th

Floor, Washington, D.C., 20006, brownjay@ballardspahr.com, miskinm@ballardspahr.com, and

russelll@ballardspahr.com.

        By: /s/ _____
            **ALEXANDER H. BELL**

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **39** of **42**

# EXHIBIT A



☰  CNN politics      SCOTUS   Congress   Facts First   2020 Elections

# US Capitol Police officer indicted on obstruction of justice charges in connection with January 6

 By Katelyn Polantz, Christina Carrega and Jessica Schneider, CNN

Updated 4:36 PM EDT, Fri October 15, 2021





⬚ Video Ad Feedback

 CNN reporter explains the evidence against Capitol officer    Trump said this key witness 'shouldn't' testify. Hear his...    'What were they thinking?': Ex-US attorney reacts to ne...   

**(CNN)** — A US Capitol Police officer was indicted on obstruction charges in connection to the January 6 insurrection at the US Capitol.

According to the indictment, Michael A. Riley told a contact online to remove posts showing the person was in the Capitol building that day.

Riley's arrest is notable among the more than 600 Capitol riot cases in that he becomes the first police officer on duty on Capitol Hill on January 6 charged with allegedly attempting to help a rioter.

The 50-year-old was arrested Friday and appeared in court on a video feed from a holding cell. He has not yet entered any plea and is not being detained pending trial, but will be barred from possessing any guns as he awaits trial. He is scheduled to be arraigned on Tuesday.

Prosecutors allege that on the day after the insurrection, Riley sent a private message on Facebook to a person who had posted selfies and videos about being in the Capitol, and whom Riley had been in fishing-related Facebook groups with.



**RELATED ARTICLE**
January 6 committee exposes a dark truth in going after Bannon

"im a capitol police officer who agrees with your political stance," Riley allegedly wrote to the person, according to the indictment. "Take down the part about being in the building they are currently investigating and everyone who was in the building is going to charged. Just looking out!"

"Im glad you got out of there unscathed We had over 50 officers hurt, some pretty bad," Riley also messaged to the person that day.

In mid-January, Riley told the person to "Get off of social media."

"Theyre arresting dozens of people aday. Everyone that was in the building, engaged in violent acts, or destruction of property...and theyre all being charged federally with felonies," Riley allegedly wrote.

They also spoke on the phone, prompting the person Riley communicated with to tell others about being in touch with "capitol police" and to anticipate trespassing charges.

Riley has been placed on administrative leave, USCP Chief Tom Manger said.



**RELATED ARTICLE**
DC police warned other agencies before January 6 rally that attendees were urged to 'come armed,' according to new document

"Obstruction of Justice is a very serious allegation. The Department was notified about this investigation several weeks ago. Upon his arrest, the officer was placed on administrative leave pending the completion of the case. The USCP's Office of Professional Responsibility will then open an administrative investigation," Manger said in a statement.

Riley had worked with the Capitol Police for 25 years, the indictment said. He was in the K-9 unit on January 6, though he was not on duty inside the Capitol building during the attack, prosecutors say, and responded to reports of an explosive device on Capitol Hill that day.

Riley then deleted his own Facebook direct messages on January 20, his indictment says. Riley indicated in a final message on January 21 he was angry with the person after seeing video of the person smoking marijuana in the Capitol and "acting like a moron," the indictment says.

"Michael Riley has served honorably as a United States Capitol Police officer for over 25 years. We look forward to fighting the charges brought against him in court," Riley's attorney David Benowitz said in a statement on Friday.

# Man wanted to start 'a revolution' on January 6

The man whom Riley allegedly warned is Jacob Hiles, according to a person familiar with the case and descriptions in court records.






National UNIVERSITY

75+ degree programs

- Online 4-week classes
- Adult-focused for 50 years

APPLY TODAY

The appearance of U.S. Department of Defense (DoD) visual information does not imply or constitute DoD endorsement.

ADVERTISEMENT

Hiles was not named in the indictment, which referred to a person who was arrested on January 19 and was asked by the FBI about communicating with Riley, according to the allegations.

Hiles, of Virginia, said on social media that he traveled to Washington, DC, while thinking about starting "a revolution," according to investigators.

In selfies from January 6 found by the FBI on social media, Hiles wore a gaiter mask and ski goggles and a sweatshirt that said "F*ck Antifa." He had also posted on his Facebook page, "Feelin cute ... might start a revolution later," tagging himself on Capitol Hill, according to documents supporting his arrest.

Hiles was arrested on January 19 and released from custody with an order to stay away from Washington. In September, he pleaded guilty to one federal charge, of parading or demonstrating inside the Capitol, according to court records.

Hiles attended the pro-Trump "Stop the Steal" rally with his cousin from Ohio, and the pair marched to the Capitol after Trump spoke, according to court records. He has agreed to pay $500 for damage to the Capitol and could face a maximum of six months in prison when he is sentenced in December.

"Mr. Hiles has done everything he can to be cooperative throughout this entire investigation," defense attorneys Charles Haskell and Alex Bell told CNN. "Mr. Hiles is receiving no benefit in exchange for his cooperation and he intends to do everything he can to put this incident behind him."

*This story has been updated with additional details.*

CNN's Whitney Wild contributed to this report.

# EXHIBIT B

*Jacob Gavin Hiles v. Cable News Network, Inc.*
U.S. District Court for the Eastern District of Virginia | Case No. 2:23-CV-351-AWA-LRL

Page **41** of **42**



U.S. Department of Justice

Channing D. Phillips
Acting United States Attorney

*District of Columbia*

_____

Judiciary Center
555 Fourth St., N.W.
Washington, D.C. 20530

**FILED**

**SEP − 9 2021**

September 7, 2021

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Alex Bell, Esq.

Re:  United States v. Jacob Hiles
Criminal Case No. 21-CR-155 (ABJ)

Dear Mr. Bell:

This letter sets forth the full and complete plea offer to your client, Jacob Hiles (hereinafter referred to as "your client" or "defendant"), from the Office of the United States Attorney for the District of Columbia (hereinafter also referred to as "the Government" or "this Office"). This plea offer expires on September 9, 2021. If your client accepts the terms and conditions of this offer, please have your client execute this document in the space provided below. Upon receipt of the executed document, this letter will become the Plea Agreement (hereinafter referred to as "this Agreement"). The terms of the offer are as follows:

1.  **Charges and Statutory Penalties**

Your client agrees to plead guilty to Count Four of the Information, charging your client with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G).

Your client understands that a violation of Title 40, United States Code, Section 5104(e)(2)(G) carries a maximum sentence of six (6) months of imprisonment, pursuant to 40 U.S.C. § 5109(b); a fine of not more than $5,000, pursuant to 18 U.S.C. § 3571(b)(6); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

In addition, pursuant to 18 U.S.C. § 3013(a)(1)(A)(ii), your client agrees to pay a special assessment of $10 to the Clerk of the United States District Court for the District of Columbia.

2.  **Factual Stipulations**

Your client agrees that the attached "Statement of Offense" fairly and accurately describes your client's actions and involvement in the offense to which your client is pleading guilty. Please

Page 1 of 9

have your client sign and return the Statement of Offense as a written proffer of evidence, along with this Agreement.

3.     **Additional Charges**

In consideration of your client's guilty plea to the above offense, your client will not be further prosecuted criminally by this Office for the conduct set forth in the attached Statement of Offense. The Government will request that the Court dismiss the remaining counts of the Information in this case at the time of sentencing. Your client agrees and acknowledges that the charges to be dismissed at the time of sentencing were based in fact.

After the entry of your client's plea of guilty to the offense identified in paragraph 1 above, your client will not be charged with any non-violent criminal offense in violation of Federal or District of Columbia law which was committed within the District of Columbia by your client prior to the execution of this Agreement and about which this Office was made aware by your client prior to the execution of this Agreement. However, the United States expressly reserves its right to prosecute your client for any crime of violence, as defined in 18 U.S.C. § 16 and/or 22 D.C. Code § 4501, if in fact your client committed or commits such a crime of violence prior to or after the execution of this Agreement.

4.     **Sentencing Guidelines Do Not Apply**

Your client understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a). Your client further understands that 40 U.S.C. § 5104(e)(2)(G) is a class B misdemeanor, as defined by 18 U.S.C. § 3559(a)(7). Accordingly, pursuant to § 1B1.9 of the United States Sentencing Commission, *Guidelines Manual* (2018), the sentencing guidelines do not apply to your client's sentencing.

5.     **Reservation of Allocution**

The Government and your client reserve the right to describe fully, both orally and in writing, to the sentencing judge, the nature and seriousness of your client's misconduct, including any misconduct not described in the charges to which your client is pleading guilty, to inform the presentence report writer and the Court of any relevant facts, to dispute any factual inaccuracies in the presentence report, and to contest any matters not provided for in this Agreement.

In addition, if in this Agreement the parties have agreed to recommend or refrain from recommending to the Court a particular resolution of any sentencing issue, the parties reserve the right to full allocution in any post-sentence litigation. The parties retain the full right of allocution in connection with any post-sentence motion which may be filed in this matter and/or any proceeding(s) before the Bureau of Prisons. In addition, your client acknowledges that the Government is not obligated and does not intend to file any post-sentence downward departure motion in this case pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure.

7-8-21

Page **2** of **9**

have your client sign and return the Statement of Offense as a written proffer of evidence, along with this Agreement.

3. **Additional Charges**

In consideration of your client's guilty plea to the above offense, your client will not be further prosecuted criminally by this Office for the conduct set forth in the attached Statement of Offense. The Government will request that the Court dismiss the remaining counts of the Information in this case at the time of sentencing. Your client agrees and acknowledges that the charges to be dismissed at the time of sentencing were based in fact.

After the entry of your client's plea of guilty to the offense identified in paragraph 1 above, your client will not be charged with any non-violent criminal offense in violation of Federal or District of Columbia law which was committed within the District of Columbia by your client prior to the execution of this Agreement and about which this Office was made aware by your client prior to the execution of this Agreement. However, the United States expressly reserves its right to prosecute your client for any crime of violence, as defined in 18 U.S.C. § 16 and/or 22 D.C. Code § 4501, if in fact your client committed or commits such a crime of violence prior to or after the execution of this Agreement.

4. **Sentencing Guidelines Do Not Apply**

Your client understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a). Your client further understands that 40 U.S.C. § 5104(e)(2)(G) is a class B misdemeanor, as defined by 18 U.S.C. § 3559(a)(7). Accordingly, pursuant to § 1B1.9 of the United States Sentencing Commission, *Guidelines Manual* (2018), the sentencing guidelines do not apply to your client's sentencing.

5. **Reservation of Allocution**

The Government and your client reserve the right to describe fully, both orally and in writing, to the sentencing judge, the nature and seriousness of your client's misconduct, including any misconduct not described in the charges to which your client is pleading guilty, to inform the presentence report writer and the Court of any relevant facts, to dispute any factual inaccuracies in the presentence report, and to contest any matters not provided for in this Agreement.

In addition, if in this Agreement the parties have agreed to recommend or refrain from recommending to the Court a particular resolution of any sentencing issue, the parties reserve the right to full allocution in any post-sentence litigation. The parties retain the full right of allocution in connection with any post-sentence motion which may be filed in this matter and/or any proceeding(s) before the Bureau of Prisons. In addition, your client acknowledges that the Government is not obligated and does not intend to file any post-sentence downward departure motion in this case pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure.

7-8-21

Page **2** of **9**

6. **Court Not Bound by this Agreement**

Your client understands that the sentence in this case will be imposed in accordance with 18 U.S.C. § 3553(a). Your client further understands that the sentence to be imposed is a matter solely within the discretion of the Court. Your client acknowledges that the Court is not obligated to follow any recommendation of the Government at the time of sentencing. Your client understands that the Government's recommendation is not binding on the Court.

Your client acknowledges that your client's entry of a guilty plea to the charged offense(s) authorizes the Court to impose any sentence, up to and including the statutory maximum sentence. The Government cannot, and does not, make any promise or representation as to what sentence your client will receive. Moreover, it is understood that your client will have no right to withdraw your client's plea of guilty should the Court impose a sentence that does not follow the Government's sentencing recommendation. The Government and your client will be bound by this Agreement, regardless of the sentence imposed by the Court. Any effort by your client to withdraw the guilty plea because of the length of the sentence shall constitute a breach of this Agreement.

7. **Conditions of Release**

Your client acknowledges that, although the Government will not seek a change in your client's release conditions pending sentencing, the final decision regarding your client's bond status or detention will be made by the Court at the time of your client's plea of guilty. The Government may move to change your client's conditions of release, including requesting that your client be detained pending sentencing, if your client engages in further criminal conduct prior to sentencing or if the Government obtains information that it did not possess at the time of your client's plea of guilty and that is relevant to whether your client is likely to flee or pose a danger to any person or the community. Your client also agrees that any violation of your client's release conditions or any misconduct by your client may result in the Government filing an <u>ex parte</u> motion with the Court requesting that a bench warrant be issued for your client's arrest and that your client be detained without bond while pending sentencing in your client's case.

8. **Waivers**

A. **Venue**

Your client waives any challenge to venue in the District of Columbia.

B. **Statute of Limitations**

Your client agrees that, should the conviction following your client's plea of guilty pursuant to this Agreement be vacated for any reason, any prosecution, based on the conduct set forth in the attached Statement of Offense, that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any counts that the Government has agreed not to prosecute or to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against your client, notwithstanding the expiration of the statute of

limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution of conduct set forth in the attached Statement of Offense that is not time-barred on the date that this Agreement is signed.

    C.    **Trial Rights**

    Your client understands that by pleading guilty in this case your client agrees to waive certain rights afforded by the Constitution of the United States and/or by statute or rule. Your client agrees to forego the right to any further discovery or disclosures of information not already provided at the time of the entry of your client's guilty plea. Your client also agrees to waive, among other rights, the right to plead not guilty, and the right to a jury trial. If there were a jury trial, your client would have the right to be represented by counsel, to confront and cross-examine witnesses against your client, to challenge the admissibility of evidence offered against your client, to compel witnesses to appear for the purpose of testifying and presenting other evidence on your client's behalf, and to choose whether to testify. If there were a jury trial and your client chose not to testify at that trial, your client would have the right to have the jury instructed that your client's failure to testify could not be held against your client. Your client would further have the right to have the jury instructed that your client is presumed innocent until proven guilty, and that the burden would be on the United States to prove your client's guilt beyond a reasonable doubt. If your client were found guilty after a trial, your client would have the right to appeal your client's conviction. Your client understands that the Fifth Amendment to the Constitution of the United States protects your client from the use of self-incriminating statements in a criminal prosecution. By entering a plea of guilty, your client knowingly and voluntarily waives or gives up your client's right against self-incrimination.

    Your client acknowledges discussing with you Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. Your client knowingly and voluntarily waives the rights that arise under these rules in the event your client withdraws your client's guilty plea or withdraws from this Agreement after signing it.

    Your client also agrees to waive all constitutional and statutory rights to a speedy sentence and agrees that the plea of guilty pursuant to this Agreement will be entered at a time decided upon by the parties with the concurrence of the Court. Your client understands that the date for sentencing will be set by the Court.

    D.    **Appeal Rights**

    Your client agrees to waive, insofar as such waiver is permitted by law, the right to appeal the conviction in this case on any basis, including but not limited to claim(s) that (1) the statute(s) to which your client is pleading guilty is unconstitutional, and (2) the admitted conduct does not fall within the scope of the statute(s). Your client understands that federal law, specifically 18 U.S.C. § 3742, affords defendants the right to appeal their sentences in certain circumstances. Your client also agrees to waive the right to appeal the sentence in this case, including but not

Page 4 of 9

7·8·21

limited to any term of imprisonment, fine, forfeiture, award of restitution, term or condition of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined, except to the extent the Court sentences your client above the statutory maximum or guidelines range determined by the Court. In agreeing to this waiver, your client is aware that your client's sentence has yet to be determined by the Court. Realizing the uncertainty in estimating what sentence the Court ultimately will impose, your client knowingly and willingly waives your client's right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement. Notwithstanding the above agreement to waive the right to appeal the conviction and sentence, your client retains the right to appeal on the basis of ineffective assistance of counsel, but not to raise on appeal other issues regarding the conviction or sentence.

### E.    Collateral Attack

Your client also waives any right to challenge the conviction entered or sentence imposed under this Agreement or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on newly discovered evidence or on a claim that your client received ineffective assistance of counsel. Your client reserves the right to file a motion brought under 18 U.S.C. § 3582(c)(2), but agrees to waive the right to appeal the denial of such a motion.

### F.    Hearings by Video Teleconference and/or Teleconference

Your client agrees to consent, under the CARES Act, Section 15002(b)(4) and otherwise, to hold any proceedings in this matter -- specifically including but not limited to presentment, initial appearance, plea hearing, and sentencing -- by video teleconference and/or by teleconference and to waive any rights to demand an in-person/in-Court hearing. Your client further agrees to not challenge or contest any findings by the Court that it may properly proceed by video teleconferencing and/or telephone conferencing in this case because, due to the COVID-19 pandemic, an in-person/in-Court hearing cannot be conducted in person without seriously jeopardizing public health and safety and that further there are specific reasons in this case that any such hearing, including a plea or sentencing hearing, cannot be further delayed without serious harm to the interests of justice.

### 9.    Use of Self-Incriminating Information

The Government and your client agree, that the Government will be free to use against your client for any purpose at the sentencing in this case or in any related criminal or civil proceedings, any self-incriminating information provided by your client pursuant to this Agreement or during the course of debriefings conducted in anticipation of this Agreement, regardless of whether those debriefings were previously covered by an "off the record" agreement by the parties.

9-8-21

Page 5 of 9

10.    **Restitution**

Your client acknowledges that the riot that occurred on January 6, 2021, caused, as of May 17, 2021, approximately $1,495,326.55 damage to the United States Capitol. Your client agrees as part of the plea in this matter to pay restitution to the Department of Treasury in the amount of $500.

Payments of restitution shall be made to the Clerk of the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, your client agrees to disclose fully all assets in which your client has any interest or over which your client exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. Your client agrees to submit a completed financial statement on a standard financial disclosure form which has been provided to you with this Agreement to the Financial Litigation Unit of the United States Attorney's Office, as it directs. If you do not receive the disclosure form, your client agrees to request one from usadc.ecfflu@usa.doj.gov. Your client will complete and electronically provide the standard financial disclosure form to usadc.ecfflu@usa.doj.gov 30 days prior to your client's sentencing. Your client agrees to be contacted by the Financial Litigation Unit of the United States Attorney's Office, through defense counsel, to complete a financial statement. Upon review, if there are any follow-up questions, your client agrees to cooperate with the Financial Litigation Unit. Your client promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement could be prosecuted as a separate crime punishable under 18 U.S.C. § 1001, which carries an additional five years' incarceration and a fine.

Your client expressly authorizes the United States Attorney's Office to obtain a credit report on your client in order to evaluate your client's ability to satisfy any financial obligations imposed by the Court or agreed to herein.

Your client understands and agrees that the restitution or fines imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, your client understands that the schedule of payments is merely a minimum schedule of payments and will not be the only method, nor a limitation on the methods, available to the United States to enforce the criminal judgment, including without limitation by administrative offset. If your client is sentenced to a term of imprisonment by the Court, your client agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically imposes a schedule of payments.

Your client certifies that your client has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by this Agreement and/or that may be imposed by the Court. In addition, your client promises to make no such transfers in the future until your client has fulfilled the financial obligations under this Agreement.

9-8-21

11. **Breach of Agreement**

Your client understands and agrees that, if after entering this Agreement, your client fails specifically to perform or to fulfill completely each and every one of your client's obligations under this Agreement, or engages in any criminal activity prior to sentencing, your client will have breached this Agreement. In the event of such a breach: (a) the Government will be free from its obligations under this Agreement; (b) your client will not have the right to withdraw the guilty plea; (c) your client will be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the Government will be free to use against your client, directly and indirectly, in any criminal or civil proceeding, all statements made by your client and any of the information or materials provided by your client, including such statements, information and materials provided pursuant to this Agreement or during the course of any debriefings conducted in anticipation of, or after entry of, this Agreement, whether or not the debriefings were previously characterized as "off-the-record" debriefings, and including your client's statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

Your client understands and agrees that the Government shall be required to prove a breach of this Agreement only by a preponderance of the evidence, except where such breach is based on a violation of federal, state, or local criminal law, which the Government need prove only by probable cause in order to establish a breach of this Agreement.

Nothing in this Agreement shall be construed to permit your client to commit perjury, to make false statements or declarations, to obstruct justice, or to protect your client from prosecution for any crimes not included within this Agreement or committed by your client after the execution of this Agreement. Your client understands and agrees that the Government reserves the right to prosecute your client for any such offenses. Your client further understands that any perjury, false statements or declarations, or obstruction of justice relating to your client's obligations under this Agreement shall constitute a breach of this Agreement. In the event of such a breach, your client will not be allowed to withdraw your client's guilty plea.

12. **Complete Agreement**

No agreements, promises, understandings, or representations have been made by the parties or their counsel other than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by your client, defense counsel, and an Assistant United States Attorney for the District of Columbia.

Your client further understands that this Agreement is binding only upon the Criminal and Superior Court Divisions of the United States Attorney's Office for the District of Columbia. This Agreement does not bind the Civil Division of this Office or any other United States Attorney's Office, nor does it bind any other state, local, or federal prosecutor. It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against your client.

9-8-21

Page 7 of 9

If the foregoing terms and conditions are satisfactory, your client may so indicate by signing this Agreement and the Statement of Offense, and returning both to me no later than **September 7, 2021**.

Sincerely yours,

Channing D. Phillips
Acting United States Attorney

By:

MARY L. DOHRMANN
Assistant United States Attorney

Page 8 of 9

9-8-21

## DEFENDANT'S ACCEPTANCE

I have read every page of this Agreement and have discussed it with my attorney, Alex Bell. I fully understand this Agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Agreement fully. I am pleading guilty because I am in fact guilty of the offense identified in this Agreement.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Agreement. I am satisfied with the legal services provided by my attorney in connection with this Agreement and matters related to it.

Date: 9/8/2021

Jacob Hiles
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Agreement, reviewed this Agreement with my client, Jacob Hiles, and fully discussed the provisions of this Agreement with my client. These pages accurately and completely set forth the entire Agreement. I concur in my client's desire to plead guilty as set forth in this Agreement.

Date: 9/8/2021

Alex Bell
Attorney for Defendant

Page 9 of 9

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: 21-CR-155 (ABJ) |
| | : | |
| v. | : | |
| | : | 40 U.S.C. § 5104(e)(2)(G) |
| JACOB HILES, | : | |
| | : | |
| Defendant. | : | |

**FILED**

SEP - 9 2021

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**STATEMENT OF OFFENSE**

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and

through its attorney, the United States Attorney for the District of Columbia, and the defendant,

Jacob Hiles, with the concurrence of his attorney, agree and stipulate to the below factual basis

for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate

that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is

secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include

permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only

authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2.      On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members

of the public.

3.      On January 6, 2021, a joint session of the United States Congress convened at the

United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint

session, elected members of the United States House of Representatives and the United States

Senate were meeting in separate chambers of the United States Capitol to certify the vote count

1


9/8/21

of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.       As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5.       At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6.       At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.



7.      Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Jacob Hiles' Participation in the January 6, 2021, Capitol Riot*

8.      The defendant, Jacob Hiles, unlawfully entered the U.S. Capitol on January 6, 2021. The defendant traveled from his home in Virginia to Washington, D.C., to participate in the "Stop the Steal" rally against the results of the 2020 Presidential Election, along with his cousin, James Matthew Horning, who traveled from Ohio. After the rally, the defendant marched to the U.S. Capitol, where at approximately 2:50 p.m. he and Horning entered together. The defendant had brought goggles with him, and he wore them to protect himself from tear gas being deployed by law enforcement against the crowd.

9.      The morning of January 6, 2021, the defendant posted a selfie-style photograph on Facebook of him in his car geotagged to Capitol Hill. The defendant and Horning both posted multiple videos and photographs showing them inside and outside the U.S. Capitol on January 6, 2021, including smoking an unknown substance.

Page 3 of 5



9-8-21

10. Following January 6, 2021, the defendant admitted on Facebook and to law enforcement that he traveled to Washington, D.C. and entered the U.S. Capitol on January 6, 2021. On Facebook, he posted that he "hoped a large crowd would send a message that we will not allow our rights to be taken."[1]

11. The defendant and Horning knew at the time they entered the U.S. Capitol Building that they did not have permission to enter the building, and the defendant and Horning paraded, demonstrated, or picketed.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: */s/ Mary L. Dohrmann*
MARY L. DOHRMANN
Assistant United States Attorney

---

[1] The defendant is aware that after January 6, 2021, Horning posted on Facebook that he went to Washington, D.C. for "3 reasons… to be there when history happens. To participate in anarchy. To smoke weed in government buildings….. The real reason was to intimidate congress."


7.8.21

### DEFENDANT'S ACKNOWLEDGMENT

I, Jacob Hiles, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 9/8/2021

Jacob Hiles
Defendant

### ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 9/8/2021

Alex Bell
Attorney for Defendant

Page 5 of 5