UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| JACOB GAVIN HILES, <br><br> Plaintiff, <br><br> v. <br><br> CABLE NEWS NETWORK, INC., <br><br> Defendant. | Civil No. 2:23cv351 |

### ORDER

Pending before the Court is a Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") brought by Defendant CABLE NEWS NETWORK, INC. ("Defendant" or "CNN"). ECF No. 12. For the following reasons, Defendant's Motion (ECF No. 12) is **GRANTED**.

**I.    BACKGROUND**

When ruling on a motion to dismiss for failure to state a claim, a court must accept a complaint's well-pled factual allegations as true and draw any reasonable inferences in favor of the plaintiff. *See, e.g.*, *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012). The Court, however, is "not so bound with respect to [the complaint's] legal conclusions." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). Accordingly, the Court reviews the facts as alleged by Plaintiff Jacob Gavin Hiles ("Plaintiff") in the Amended Complaint. *See* Am. Compl. at 2–32,[1] ECF No. 9.

---

[1] The paragraph numbering of Plaintiff's Amended Complaint is inconsistent and repetitive starting at page 21. Because this renders it impracticable to cite the Amended

1

A.     **Factual Allegations**

Plaintiff is a Virginia resident. *Id.* at 2. Defendant CNN is a Delaware corporation with its principal place of business in Georgia. *Id.*

Plaintiff arrived in Washington, D.C. at approximately 5:30 a.m. on January 6, 2021, having driven from his home in Virginia Beach. *Id.* at 3. He traveled to Washington for the purpose of attending "pro-Trump" political rallies and exercising his First Amendment rights. *Id.* The demonstrations were permitted events, vetted by the U.S. Capitol Police Board, and expected to be peaceful; Plaintiff was not a member of any group that organized the demonstrations. *Id.* The rallies were organized to display support for then-President Donald Trump and to protest the results of the 2020 presidential election. *Id.*

According to a later published bipartisan Senate report, as reported by CNN in June 2021, the demonstrations "descended into chaos after a few hours when a 'riot' was officially declared by local police at the U.S. Capitol around 1:49 p.m." *Id.* at 4 & n.5. Around 2:11 p.m., a large group of violent rioters and insurrectionists who attended the demonstrations engaged and assaulted U.S. Capitol police officers at the Capitol Building. *Id.* They eventually broke through police barricades and breached the building in a coordinated effort to prevent Congress from certifying the results of the Electoral College. *Id.* Plaintiff was not part of this effort. *Id.*

---

Complaint accurately by paragraph, the Court will cite the Amended Complaint using the ECF pagination instead.

2

According to the Senate report and related court filings, violent rioting took place inside the Capitol Building for approximately the next 40 minutes. *Id.* The rioters and insurrectionists ransacked offices, smashed windows and doors, committed theft and vandalism, assaulted police, and demanded that members of Congress be brought out to meet the rioters. *Id.* at 5.

After the violent rioting subsided around 2:45 p.m., hundreds to potentially thousands of other demonstrators who did not participate in or encourage the violent riots formed a line to the Capitol Building and walked, illegally, inside the building at approximately 2:50 p.m. *Id.* Most of these demonstrators, including Plaintiff, "peacefully meander[ed]" through the Capitol Building for "mere minutes . . . before exiting of their own volition." *Id.* Most, again including Plaintiff, did not commit violence or other crimes reflective of rioting or participating in an insurrection or coordinated effort to overthrow the U.S. Government. *Id.*

On August 17, 2021, CNN published an article[2] that described a plea to illegally parading, demonstrating, or picketing as the "typical deal for nonviolent rioters." Am. Compl. at 6, ECF No. 9. That article quoted a demonstrator as stating that police officers did not even try to stop them from entering the Capitol and that the door was held open by someone who appeared to be in authority. *Id.* On September 8, 2021, Plaintiff entered a plea agreement in connection with trespassing into the

---

[2] Marshall Cohen & Hannah Rabinowitz, *Some US Capitol rioters stay defiant, even while pleading guilty*, CNN Politics (Aug. 17, 2021), https://www.cnn.com/2021/08/17/politics/capitol-rioters-defiant-guilty-pleas/index.html.

3

Capitol Building at approximately 2:50 p.m. on January 6, 2021. *Id.* The plea agreement was publicly accessible at the time of the allegedly defamatory article (the "Article") published by CNN that gives rise to this lawsuit. *Id.* The plea agreement reflects that Plaintiff agreed to plead guilty to "Parading, Demonstrating, or Picketing in a Capitol Building," in violation of 40 U.S.C. § 5104(e)(2)(G), a class B misdemeanor with a maximum sentence of six months. *Id.* at 6; Am. Compl., Ex. B. at PageID 124–25,[3] ECF No. 9.

CNN also knew at the time it published the Article that Plaintiff's plea agreement incorporated a separate "Statement of Offense" which contained a factual summary of his actions at the Capitol. *Id.* at 7; Am. Compl, Ex C. at PageID 135–39, ECF No. 9. The Statement of Offense includes a summary of the violent entry into the Capitol Building around 2:00 p.m. and the interruption of the certification proceedings then underway. Am. Compl. at 7, ECF No. 9; Am. Compl. Ex. C at PageID 136–37, ECF No. 9. It then describes Plaintiff's own actions on January 6 as follows:

> 8. The defendant, Jacob Hiles, unlawfully entered the U.S. Capitol on January 6, 2021. The defendant traveled from his home in Virginia to Washington, D.C. to participate in the "Stop the Steal" rally against the results of the 2020 Presidential Election, along with his cousin, James Matthew Horning, who traveled from Ohio. After the rally, the defendant marched to the U.S. Capitol, where at approximately 2:50 p.m. he and Horning entered together. The defendant had brought goggles with him, and he wore them to protect himself from tear gas being deployed by law enforcement against the crowd.

---

[3] The plea agreement is attached to the Amended Complaint as Exhibit B and is included within ECF No. 9. Exhibit B appears at ECF-generated pages 46 to 55. Unfortunately, the ECF-generated page numbering is obscured. However, the "PageID" numbering is visible. Therefore, the Court will refer to the plea agreement, as well as the other two exhibits to the Complaint, by using the PageID numbering.

4

> 9. The morning of January 6, 2021, the defendant posted a selfie-style photograph on Facebook of him in his car geotagged to Capitol Hill. The defendant and Horning both posted multiple videos and photographs showing them inside and outside the U.S. Capitol on January 6, 2021, including smoking an unknown substance.
>
> 10. Following January 6, 2021, the defendant admitted on Facebook and to law enforcement that he traveled to Washington, D.C. and entered the U.S. Capitol on January 6, 2021. On Facebook, he posted that he 'hoped a large crowd would send a message that we will not allow our rights to be taken.'
>
> 11. The defendant and Horning knew at the time they entered the U.S. Capitol Building that they did not have permission to enter the building, and the defendant and Horning paraded, demonstrated, or picketed.

Am. Compl., Ex. C at PageID 137–38, ECF No. 9; *see also* Am. Compl. at 7–8, ECF No. 9. Importantly, the paragraphs above (paragraphs 8 to 11) are directly preceded in the Statement of Offense by a bolded and italicized heading reading: "***Jacob Hiles' Participation in the January 6, 2021, Capitol Riot***." Am. Compl., Ex. C at PageID 137, ECF No. 9. Plaintiff does not quote this section of the Statement of Offense in the Amended Complaint, nor does he include any ellipsis to indicate an omission. *See* Am. Compl. at 7–8, ECF No. 9 (continuing directly from paragraph 6 to paragraph 8 without indicating omission of paragraph 7 or heading preceding paragraph 8).

On October 15, 2021, CNN's reporter Jessica Schneider ("Schneider"), who had been covering the Capitol riots for months, called one of Plaintiff's defense attorneys requesting a statement about his case. *Id.* at 9. The attorney agreed to do so if CNN published an accurate and favorable story about Plaintiff. *Id.* The attorney also advised Schneider that Plaintiff had recently pled guilty to a misdemeanor in connection

5

with his actions on January 6, 2021. *Id.* Several hours later, CNN published the Article, which was titled "US Capitol Police officer indicted on obstruction of justice charges in connection with January 6" and identified Schneider as one of the authors. *Id.* at 9–10; *see* Am. Compl., Ex A, ECF No. 9.[4]

Plaintiff alleges that the Article "contains various inaccuracies and deliberately misleading and defamatory statements about Plaintiff." Am. Compl. at 10, ECF No. 9. More specifically, Plaintiff claims that the Article "directly and implicitly—and falsely" accuses him of "being among the violent rioters and insurrectionists who attacked the U.S. Capitol Building and tried to overthrow the U.S. Government." *Id.* He further claims that CNN "knowingly reported false information in the Article about Plaintiff; namely, information appearing in court filings for Plaintiff's criminal case" in order to fit Plaintiff into a pre-packaged narrative. *Id.* This narrative was that "the violent rioters and insurrectionists at the U.S. Capitol on January 6th had pre-planned and coordinated an attack against the United States with the specific goal of overthrowing the U.S. Government and ensuring then-President Trump remained in power in what amounted to an attempted coup d'etat." *Id.* However, Plaintiff had no knowledge of or connection to such a plot. *Id.*

Plaintiff notes that on the same date the Article was published, his defense attorney called Schneider to point our numerous inaccuracies and complain about the

---

[4] The Article also remains accessible online. Katelyn Polantz, Christina Carrega & Jessica Schneider, *US Capitol Police officer indicated on obstruction of justice charges in connection with January 6*, CNN Politics (Oct. 15, 2021), https://www.cnn.com/2021/10/15/politics/capitol-police-january-6/index.html.

6

overall tenor of the Article. *Id.* at 16. Schneider apologized, but CNN did not and has not retracted or made any substantive edits to the story. *Id.*

The Article begins by addressing the indictment of U.S. Capitol Police Officer Michael Riley. *Id.*; Am. Compl., Ex. A at PageID 119. It states that Riley was charged with obstruction of justice, in part for sending direct messages to Plaintiff on Facebook and warning Plaintiff that he should remove posts showing him inside the Capitol on January 6. *Id.* at 16–17; Am. Compl., Ex. A at PageID 119–20, ECF No. 9. The Article states that Riley is the first officer "charged with allegedly attempting to help a rioter." Am. Compl., Ex. A at PageID 119, ECF No. 9.

The second section of the Article refers To Plaintiff and begins with the heading "Man wanted to start 'a revolution' on January 6." *Id.* at PageID 121. In its entirety, it reads:

> **Man wanted to start 'a revolution' on January 6**
>
> The man whom Riley allegedly warned is Jacob Hiles, according to a person familiar with the case and descriptions in court records.
>
> Hiles was not named in the indictment, which referred to a person who was arrested on January 19 and was asked by the FBI about communicating with Riley, according to the allegations.
>
> Hiles, of Virginia, said on social media that he traveled to Washington, DC, while thinking about starting "a revolution," according to investigators.
>
> In selfies from January 6 found by the FBI on social media, Hiles wore a gaiter mask and ski goggles and a sweatshirt that said "F*ck Antifa." He had also posted on his Facebook page, "Feelin cute … might start a revolution later," tagging himself on Capitol Hill, according to documents supporting his arrest.
>
> Hiles was arrested on January 19 and released from custody with an order to stay away from Washington. In September, he pleaded guilty to one federal charge, of parading or demonstrating inside the Capitol, according to court records.

7

> Hiles attended the pro-Trump "Stop the Steal" rally with his cousin from Ohio, and the pair marched to the Capitol after Trump spoke, according to court records. He has agreed to pay $500 for damage to the Capitol and could face a maximum of six months in prison when he is sentenced in December.
>
> "Mr. Hiles has done everything he can to be cooperative throughout this entire investigation," defense attorneys Charles Haskell and Alex Bell told CNN. "Mr. Hiles is receiving no benefit in exchange for his cooperation and he intends to do everything he can to put this incident behind him."

*Id.* at PageID 121–22.

Although Plaintiff is referred to as a "rioter" in the Article,[5] he alleges that he was never charged with or accused of rioting at the U.S. Capitol. Am. Compl. at 19, ECF No. 9. Plaintiff further quotes definitions of "riot" from Virginia and federal law and alleges that his activities do not meet these definitions. *Id.* at 20. CNN had made distinctions between rioters and demonstrators in prior reports, including when covering the 2015 Baltimore riots, when CNN analyst Mark Lamont Hill pointed out that not all demonstrators present were rioters. *Id.* at 20–21. Likewise, in April 2021, Schneider had published an article differentiating conspiracy cases brought against about 20 members of paramilitary groups from "hundreds of rioters facing trespassing charges." *Id.* at 21.

The Article also omits certain matters. These include that Plaintiff voluntarily turned himself into the FBI, that Plaintiff refused to destroy incriminating evidence and instead handed it over to the FBI, that Plaintiff assisted the FBI in identifying

---

[5] The Complaint states that the Article refers to Plaintiff as a rioter "throughout." Am. Compl. at 19, ECF No. 9. However, in examining the actual exhibit supplied by Plaintiff, the Court identified only the single instance of the word "rioter," quoted in the text above.

8

at least two actual rioters, and that Riley's indictment did not refer to "Person 1" (Plaintiff) as a rioter or insurrectionist or any similar term. *Id.* at 22, 24.

The Facebook post quoted by the Article was included in the Statement of Facts supporting the original charges against Plaintiff. *Id.* at 25. The post reflects that it was posted at 5:46 a.m. and that Plaintiff was in Capitol Hill when he posted it. *Id.* at 26. The post is accompanied by "an obviously tongue-in-cheek" caption, "Feelin cute … might start a revolution later. IDK – in Capitol Hill." *Id.* Plaintiff never said that he traveled to Washington, D.C. while thinking about starting a revolution, as the statement was posted when he was already in Washington, D.C. *Id.* The Article also omits the phrase "IDK" (short for "I don't know") from the Facebook post. *Id.* at 29. The Statement of Facts also reported a different Facebook post in which Plaintiff stated "the crowd pushed him to the top of the steps" and that after he entered the Capitol he "just wanted to leave." *Id.* at 28. This was not reported in the Article. *Id.*

The Article also omits the fact that Plaintiff entered the Capitol at 2:50 p.m., by which point the violent riots had effectively subsided. *Id.* at 29. The Article does not mention that Plaintiff was never charged with or even accused of engaging in violence or any additional crime while inside the Capitol, aside from the "parading" charge. *Id.*[6] In reporting Plaintiff's guilty plea to parading or demonstrating inside

---

[6] The Amended Complaint actually reads: "The Article also *does mention* that Plaintiff was never charged or even accused of engaging in violence . . . ." Am. Compl. at 29, ECF No. 9 (emphasis added). However, it is clear to the Court that this is a typo, and that Plaintiff meant to write that the Article "does *not* mention" these facts.

9

the Capitol, the Article did not refer to this as the "typical deal for nonviolent rioters," although CNN had described such a deal that way in a past article. *Id.* at 31.

The Article has been shared by many of CNN's reported 200 million online viewers including on Facebook, where CNN has over 39 million followers. *Id.* at 31. The Article has been "liked" on Facebook over 6,100 times, with 288 user comments and 27 users sharing the Article on their personal Facebook pages. *Id.* CNN also shared the Article on its separate CNN Politics Facebook page, with 3 million followers. On that page, the Article garnered 372 likes, 212 comments, and 27 users sharing the Article on their own pages. *Id.* CNN similarly shared the Article on two Twitter accounts with over 68 million followers combined, resulting in more than 400 retweets and 1,500 "likes." *Id.*

Due to this broad reach, since the Article was published, Plaintiff and his family have been bullied and treated like pariahs. *Id.* at 31–32. They also received credible death threats that have been reported to the U.S. Attorney's Office and the FBI. *Id.* Plaintiff's personal and professional reputation has been destroyed, and he has lost business, income, and earning capacity. *Id.* at 32. Plaintiff claims defamation by implication from the Article, *id.* at 32–35, as well as defamation *per se*, *id.* at 35–38, and requests damages of $50 million plus punitive damages, attorney fees, and other relief, *id.* at 38.

### B. Procedural History

Plaintiff initially filed suit in Virginia Beach Circuit Court on October 14, 2022. Compl., ECF No. 1-1. After service in June 2023, CNN removed the Complaint to this

Court on July 17, 2023. Notice of Removal, ECF No. 1. On July 24, 2023, CNN moved to dismiss the Complaint. First Mot. Dismiss, ECF No. 5. On August 14, 2023, Plaintiff filed the Amended Complaint. Am. Compl., ECF No. 9.

On August 28, 2023, CNN moved to dismiss the Amended Complaint. Mot. Dismiss, ECF No. 12; Mem. Supp., ECF No. 12-1. Plaintiff filed a Response in Opposition on September 11, 2023. Resp. Opp'n, ECF No. 15. CNN filed its Reply on September 18, 2023. Reply, ECF No. 16. The Court has determined that a hearing on the Motion is unnecessary, as the issues for decision are adequately presented in the briefs.[7] *See* E.D. Va. Local Civ. R. 7(J). The Motion is ripe for adjudication.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss should be granted if the complaint does not

---

[7] The Court notes that on January 19, 2024, Plaintiff filed a request for entry of default based on CNN's failure to set this motion for argument, citing Local Civil Rule 7(E). Request Entry Default, ECF No. 17. However, Local Civil Rule 7(E) only applies in lieu of a more specific order from this Court. E.D. Va. Local Civ. R. 7(E) ("Except as otherwise provided by an order of the Court . . ."). In its initial order in this case, the Court arguably supplanted Local Civil Rule 7(E). Proc. for Civil Motions, ECF No. 3. That order stated, "If neither party requests oral argument on a motion, and the Judge declines to request oral argument, that motion will be referred to Judge Allen and taken under advisement when the time for full briefing has expired." *Id.* In any event, the Court will consider the motion despite the moving party's failure to set this motion for argument because the Court would not have found oral argument necessary regardless. Moreover, any untimeliness in attempting to set the motion for argument is excused in the interests of justice. *See Babakaeva v. PTR Invs., Inc.*, 2022 WL 807381, at *1 n.2 (E.D. Va. Feb. 11, 2022) (noting district court's discretion to excuse violations of the Local Rules). Accordingly, the Court will now rule on the Motion, and Plaintiff's Request for Entry of Default (ECF No. 17) is **DENIED**.

11

allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An adequate claim requires more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

A threadbare recitation of the "elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Although the truth of the facts alleged is assumed, and the facts are taken in the light most favorable to the plaintiff, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even

if doubtful in fact)." *Id.* at 555, 570 (internal citations and footnote omitted). A complaint may survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) (internal quotation marks omitted). Notably, however, the plausibility standard has particular applicability to defamation complaints regarding matters of public concern: "[B]ecause the defense of baseless defamation claims imposes an additional cost, in the form of potentially deterred speech, federal courts have historically given close scrutiny to pleadings in libel actions." *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 500 (W.D. Va. 2019).

In addition to the allegations within the four corners of the complaint, without converting a Rule 12(b)(6) motion into one for summary judgment, a court may also consider the complaint's attachments, documents incorporated by reference into the complaint, and documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The court may also take judicial notice of items in the public record, including court records. *See Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (taking notice of statistics from government website); *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006) (holding that the court may "clearly take judicial notice" of court records in considering motion to dismiss); *see also, e.g.*, *Spirito v. Peninsula Airport Comm'n*, 350 F. Supp. 3d 471, 485 (E.D. Va. 2018) (taking notice of state court records).

## III. ANALYSIS

### A. Virginia Defamation Standard

The requirements of a defamation claim in Virginia were aptly summarized in *Fairfax v. CBS Broadcasting Inc.*:

> Under Virginia law, the elements of common law defamation are the "(1) publication of (2) an actionable statement with (3) the requisite intent." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (applying Virginia law). A statement is actionable if it contains a false assertion of fact that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* Actionable defamation can be based on a statement that is either defamatory per se or defamatory by implication. Whether a statement is actionable is a threshold question of law for courts to decide. *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 294 (4th Cir. 2008).
>
> "[A] statement is defamatory *per se* if it, among other circumstances, … impute[s] to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment." *CACI*, 536 F.3d at 292–93 (quoting *Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 591–92 (Va. 1954)). A statement is defamatory by implication if "(1) the defendants made the statements alleged in the complaint, (2) the statements, even if facially true, were designed and intended by the defendants to imply [the defamatory meaning], (3) in the light of the circumstances prevailing at the time they were made, the statements conveyed that defamatory implication to those who heard or read them, and (4) the plaintiff suffered harm as a result." *Pendleton v. Newsome*, 772 S.E.2d 759, 765 (Va. 2015).

*Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581, 591 (E.D. Va. 2020), *aff'd sub nom.*

*Fairfax v. CBS Corp.*, 2 F.4th 286 (4th Cir. 2021) (cleaned up).

### B. The Virginia Fair Report Privilege

Under Virginia law, "[t]he publication of public records to which everyone has a right of access is privileged, if the publication is a fair and substantially correct

statement of the transcript of the record." *Dangerfield v. WAVY Broad., LLC*, 228 F. Supp. 3d 696, 701 (E.D. Va. 2017) (quoting *Alexandria Gazette Corp. v. West*, 93 S.E.2d 274, 279 (Va. 1956)). "A defendant cannot invoke the fair report privilege if it abuses that privilege." *Spirito*, 350 F. Supp. 3d at 485. "Such abuse occurs if a publication is not made in good faith or is not a 'substantially accurate account of the public record or proceeding.'" *Id.* (quoting *Alexandria Gazette*, 93 S.E.2d at 279). "It is not necessary that the published report be verbatim, but it must be substantially correct." *James v. Powell*, 152 S.E. 539, 545 (Va. 1930); *see also Spirito*, 350 F. Supp. 3d at 487 ("As long as [Defendant's] representation of the report was substantially accurate, selective representation of the report's contents does not constitute abuse."); *Alexandria Gazette*, 93 S.E.2d at 281–82 ("[W]hile the news article was not exactly correct, it constituted no substantial departure from the language [in the court document].").

The fair report privilege supports the press's function of "inform[ing] citizens of what the government is doing." *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 712–13 (4th Cir. 1991). "In return for frequent and timely reports on governmental activity, defamation law [through the privilege] has traditionally stopped short of imposing extensive investigatory requirements on a news organization reporting on a governmental activity or document." *Id.*; *see also Ditton v. Legal Times*, 947 F. Supp. 227, 230 (E.D. Va. 1996) ("[T]he availability of the privilege encourages the media to disseminate official records—whether verbatim or in fair summaries—without fear

15

of liability for any false, defamatory material that they might contain.") (quoting *Dameron v. Wash. Mag., Inc.*, 779 F.2d 736, 739 (D.C. Cir. 1985)).

"Under Virginia law, whether the fair report privilege applies and whether a statement is reasonably capable of conveying a defamatory implication are matters of law to be decided on a motion to dismiss." *Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC*, 821 F. App'x 234, 239 (4th Cir. 2020). Indeed, where the matter can be decided on a motion to dismiss, it is important for the court to do so, before the defendant "incurs further litigation costs, lest similar defamation claims have a chilling effect on government reporting." *Spirito*, 350 F. Supp. 3d at 488.

### C. The fair report privilege applies and bars Plaintiff's claims.

In the Motion to Dismiss, CNN argues that the Amended Complaint should be dismissed for several reasons. The Court finds that the first and main argument—that Virginia's fair report privilege bars the defamation claims—is sufficient to decide this case, and therefore confines its analysis to that point.

As noted above, "Virginia's fair report privilege protects the publication of 'accounts of public proceedings or reports' — for example, records of judicial proceedings." *Agbapuruonwu*, 821 F. App'x at 239 (quoting *Lee v. Dong-A Ilbo*, 849 F.2d 876, 878 (4th Cir. 1988)). "The fair report privilege applies 'so long as the report is accurate and either complete or fairly abridged.'" *Id.* (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1097 (4th Cir. 1993)) (cleaned up). Here, the challenged statements all derive from publicly available court materials in Plaintiff's criminal case and are

16

substantially accurate and fair abridgements of those materials. Therefore, the fair report privilege replies.

First, Plaintiff does not dispute that he initialed each page of and signed the Statement of Offense—indisputably a court record—which expressly describes "Jacob Hiles' Participation in the January 6, 2021, Capitol *Riot*." Am. Compl., Ex. C at PageID 137, ECF No. 9 (emphasis added). Thus, for all of his nuanced arguments about the meaning of the word "riot" and the alleged implications of CNN's report, the issue is ultimately simple: if he did not want to be called a "rioter," Plaintiff should not have admitted in a court proceeding to "Participation in . . . [a] Riot." The Court declines to find that the use of the term "rioter" in one instance in the article is an abuse of the fair report privilege, when the Plaintiff's own admission gathers all of his behavior under the heading of "Participation in . . . [a] riot." Rather, CNN's use of the term is a fair and substantially correct statement of the contents of the public record. *See Lowery v. Stovall*, 92 F.3d 219, 225 (4th Cir. 1996) ("Particularly galling is the situation where a criminal convicted on his own guilty plea seeks as a plaintiff in a subsequent civil action to claim redress based on a repudiation of the confession. . . . There should be an estoppel in such a case.")

Second, the Statement of Facts filed by the Government in Plaintiff's case—again, indisputably a court record—included the Facebook post at issue here, in which Plaintiff stated, "Feeling cute … might start a revolution later, IDK" with the geotag "in Capitol Hill." *See* Statement of Facts at 2 (quoting post) and 3 (screenshot

17

of post), ECF No. 12-3. CNN included in the Article the following description of the Facebook post as reported in the Statement of Facts:

> In selfies from January 6 found by the FBI on social media, Hiles wore a gaiter mask and ski goggles and a sweatshirt that said "F*ck Antifa." He had also posted on his Facebook page, "Feelin cute … might start a revolution later," tagging himself on Capitol Hill, according to documents supporting his arrest.

Am. Compl., Ex. A at PageID 122, ECF No. 9. The only difference between the content of the Government record (and Plaintiff's own words) and the report in the Article is the omission of the term "IDK" (I don't know). This minor discrepancy is not sufficient to show that CNN abused the fair report privilege. *See Spirito*, 350 F. Supp. 3d at 487 ("As long as [Defendant's] representation of the report was substantially accurate, selective representation of the report's contents does not constitute abuse."). The phrase "IDK" serves the same function in the post as the word "might" and the term "feelin cute"—it tends to indicate that the poster may not be entirely serious about what he is saying. By retaining two of these softening terms, CNN's abridgement maintains the essence of both the content and tone of the post and is thus substantially accurate and a fair abridgement. *See Alexandria Gazette*, 93 S.E.2d at 281–82 ("[W]hile the news article was not exactly correct, it constituted no substantial departure from the language [in the source]."). Therefore, the fair report privilege applies to the Article's reporting of the Facebook post.

The Court perceives no other challenged content in the Article that is not also drawn directly from the court records in Plaintiff's case. *See, e.g.*, Am. Compl., Ex. A at PageID 122, ECF No. 9 ("Hiles attended the pro-Trump 'Stop the Steal' rally with

his cousin from Ohio, and the pair marched to the Capitol after Trump spoke, according to court records. He has agreed to pay $500 for damage to the Capitol and could face a maximum of six months in prison when he is sentenced in December."). At bottom, the Court agrees with CNN that Plaintiff "essentially is trying to blame CNN for taking his own words at face value." Mem. Supp. at 26, ECF No. 12-1. Under the circumstances of this case, CNN was entitled to do so, and its reporting is protected by the fair report privilege. Accordingly, CNN's Motion is **GRANTED**, and the Amended Complaint is **DISMISSED**.[8]

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 12) is **GRANTED**. The Amended Complaint (ECF No. 9) is **DISMISSED with prejudice**. The Clerk is **REQUESTED** to forward a copy of this Order to counsel of record for all parties.

**IT IS SO ORDERED**.

/s/
Arenda L. Wright Allen
United States District Judge

April 29, 2024
Norfolk, Virginia

---

[8] Assuming without deciding that CNN is correct that Virginia Code § 801-223.2(C) would authorize a discretionary award of attorney fees in this case, the Court declines to exercise its discretion to award such fees.

19